Estie M. SWEENEY et al., Plaintiffs-Respondents,

v.

Joseph Charles EATON et al., Defendants-Appellants.

No. 56296.

Supreme Court of Missouri,
Division No. 2.

Nov. 13, 1972.

Marvin L. Dinger, Ironton, for plaintiffs-respondents.

David L. Colson, Farmington, for defendants-appellants.

FRANK D. CONNETT, Jr., Special Judge.

This is an action contesting the will of Ethel Jackson Robson. This will devised real estate to Joseph C. Eaton and his wife, Patsy Eaton. A jury was waived and the case was tried by the Court. The Court found that the will was procured by the undue influence of the defendant, Joseph Eaton, appellant herein.

There are two issues in this appeal: Do plaintiffs, contesting the will, have standing in accordance with the provisions of Section 473.083 V.A.M.S. to contest this will? Is there competent evidence to substantiate the trial court's finding of undue influence? That is, did plaintiffs carry their burden of producing substantial evidence of undue influence? Switzer v. Switzer, Mo.Sup., 373 S.W.2d 930, 932.

Testatrix, Ethel Jackson Robson, was a widow in her seventies. She lived alone in Pilot Knob, Missouri. She was rather a salty individual, who for the most part, was independent. She received monthly checks from the Veterans Administration and Social Security. Although at times forgetful, she looked after her own affairs. A Mr. Douglas generally brought her mail and checks and drove her to stores to shop. She kept in touch almost daily with neighbors and relatives of her deceased husband. She had no blood relatives. In 1959, she had a will drawn by Mr. William Edgar, Sr., Ironton, who was her personal attorney. She saw him two or three times a year. By this will she left all of her property to Nada Counts Kirby and Estie M. Sweeney. They were relatives of her deceased husband. No copy of this will was found, and Mr. Edgar was deceased at the time of the trial.

Defendant, Joseph Eaton, 31 years old, was a route man for Ribak Cleaners of Flat River when he first met Mrs. Robson. He became acquainted with Mrs. Robson when she asked him to pick up her dry cleaning. They became close friends. This friendship lasted until her death, a period of about three years. He saw her two or three times a week for two or three hours at a time. On these visits they sat and talked or watched television. He occasionally took her for drives and on errands. He also visited her on Christmas and Thanksgiving. She called him at Eaton's home sometimes as much as two or three times a week. This generally occurred during inclement weather. On these occasions she often visited with Eaton's wife, Patsy, whom Mrs. Robson only met personally once shortly before she died on July 3, 1966. She gave presents to Eaton's children at Christmas, and occasionally bought cigarettes for him when he took her shopping. She purchased a pair of trousers for him. In April, 1965, Mrs. Robson had Mr. Edgar draw up a new will leaving $50 to the Masonic Cemetery Association and the remainder to Mr. and Mrs. Eaton. After the will was executed, she showed it to Mr. Eaton. She also told him about her bonds and about the prior will. Also, after this date, she purchased a used car for the Eatons for either $125 or $200. During the time of their friendship she loaned Mr. Eaton five or six hundred dollars, which he repaid.

" 'Undue influence, to be effective in breaking a will, must have been present, in active exercise, and sufficient to destroy the free agency of the testator at the time of the making of the will, so that the will is not, "in fact his own will, but that of the party who was exercising the undue influence." ' " State ex rel. Smith v. Hughes, 356 Mo. 1, 200 S.W.2d 360, 363, quoting Beckmann v. Beckmann, 331 Mo. 133, 52 S.W.2d 818, 823. But in this case there is no evidence that Joseph Eaton influenced Mrs. Robson in the making of her will. However, undue influence and its connection to a will may be shown by circumstantial evidence, and it is not necessary to show overt acts at the very time the will was made. State ex rel. Smith v. Hughes, supra. The existence of a confidential relationship between a testator and one who is the beneficiary of a substantial bequest, coupled with activity on the part of the beneficiary in the procuring of the will, raises a presumption of the use of undue influence by the beneficiary. Loehr v. Starke, 332 Mo. 131, 56 S.W.2d 772, 779. The relationship between two people, to be classified as confidential when it is not technically so, must be one in which one trusts in and relies on the other with respect to property or business; i. e., financial affairs. Hedrick v. Hedrick, 350 Mo. 716, 168 S.W.2d 69, 74.

Respondent's argument is that when Eaton "found out he was dealing with an elderly woman who had no blood relatives, who had money, and who was lonely and needed company, he took the time necessary to curry her favor and build a confidential relationship. This confidential relationship led to the changing of testatrix's will to his advantage. What else could explain Mr. Eaton's taking three years out of his life except to influence testatrix to substitute him and his wife as sole beneficiaries in her will. Since he was not related to her in any way, such action was necessary if he were to participate in her will." This argument is founded on the relationship between the parties as heretofore recited, and the testimony of one Clifford Hewkin that Joseph Eaton had told him that he, Eaton, knew a lady in Pilot Knob he was taking care of; that she had forty-five thousand dollars; that he saw a stack of bonds six inches high; and that he would like to see every one of his children have a dollar bill in one hand and a candy bar in the other. However, it appears as best we can ascertain from the record, that this statement was made after the will was drawn. Further, it appears to be no more than the revelation of a desire to see his children blessed with material

possessions, a motive for his attention to Mrs. Robson.

 The desire to be remembered in a will, even by a non-relative, is not sufficient to set aside a will which fulfills this wish. Mere influence or intent to influence or even hope to influence on the part of a beneficiary will not void a will. It must be undue influence. Look v. French, 346 Mo. 972, 144 S.W.2d 128, 132; State ex rel. Smith v. Hughes, supra. A testatrix, having sufficient mental capacity, may dispose of her property to whomever and however she desires at the time. Berberet v. Berberet, 131 Mo. 399, 33 S.W. 61, 64; Callaway v. Blankenbaker, 346 Mo. 383, 141 S.W.2d 810, 816.

Respondents may have correctly interpreted Joseph Eaton's actions, intentions and hopes. But this does not void the will. A finding of undue influence cannot rest upon speculation and conjecture. Motive and opportunity alone are not enough. State ex rel. Smith v. Hughes, supra.

In this case there is no evidence that Mr. Eaton had anything to do with the making of the will. Mrs. Robson went to her own attorney with whom she had done business for several years. The evidence was that Mr. Eaton first learned of this will after it was made. Further, there was no confidential relationship between them in regard to financial affairs. It was only after the will was drawn that Mr. Eaton even discussed any financial matters with Mrs. Robson, and it was after that that he learned of the prior will.

Respondents cite Clark v. Powell, 351 Mo. 1121, 175 S.W.2d 842, and McCormack v. Berking, 365 Mo. 913, 290 S.W.2d 145, as authority for their contention that the evidence was sufficient to sustain a finding of undue influence. These cases are distinguishable on the facts. In Clark v. Powell, supra, the proponent and principal beneficiary of the will was active in the procurement of the will and had a confidential relationship with testatrix in regard to her financial affairs. In McCormack v. Berking, supra, there was activity by the beneficiary in the making of the will. In the instant case there is no evidence that Eaton had anything to do with the making of the will or knew it was to be made or knew it had been made until testatrix showed it to him.

Finding that there was no substantial evidence of undue influence, the case must be reversed. We do not reach the issue of plaintiff's standing to sue.

The judgment is reversed.

All of the Judges concur.