Louise **METTER** and Anna Kube,
Plaintiffs-Appellants,

v.

Charles **JANSSEN**, Defendant-Respondent.

No. 34490.

Missouri Court of Appeals,
St. Louis District.

May 29, 1973.

Rehearing Denied Aug. 16, 1973.

Charles B. Blackmar, St. Louis, for plaintiffs-appellants.

Don Fisher, Champ C. Stonebraker, St. Louis, for defendant-respondent.

PER CURIAM.

This is an appeal from a judgment of the Circuit Court of the City of St. Louis declaring an instrument in writing dated the 14th day of September, 1967, to be the Last Will and Testament of one Marie Rogles, deceased. The issues presented on appeal are that the trial court erred in granting a directed verdict in favor of the Respondent on the grounds that Appellants had not made a submissible case of undue influence. We affirm.

The appellants are the sisters of the testatrix who were specifically excluded from the contested will; the respondent is the nephew of the decedent and the person to whom testatrix bequeathed all of her personal and real property after payment of her just debts and funeral expenses.

The testatrix, an 82 year old widow at the time she executed the will on the 14th day of September, 1967, died on the 25th day of August, 1970, her will was filed in the Probate Court of the City of St. Louis the next day, August 26, 1970, and admitted to probate on the 2nd day of September, 1970. In their petition the appellants alleged that the testatrix was, at the time of the execution of the will, of unsound mind, incapable of understanding or appreciating what disposition she had made or was making of her affairs and that the decedent was under the "influence, domination and control" of the Respondent who prevailed upon her to make the will wherein the appellants were excluded as legatees.

At trial the proponent introduced into evidence the will and the records of the Probate Court of the City of St. Louis, the testimony of the attorney who prepared the will, attended to the formalities of execution and together with his wife signed as witnesses of the will.

The attorney and his wife also testified that the testatrix published the will as her last will and testament after reading it and decedent was of sound and disposing mind when the will was executed. The scrivener also testified that he had known the decedent for six or seven years during her lifetime and was first introduced to her by the respondent. He testified further that he had prepared other wills prior to this one under consideration in which Mrs. Rogles left all of her properties to the respondent, and that on the occasion of the preparation of this last will he had discussed with the testatrix what disposition she wished made of her properties and she specifically stated that she was leaving nothing to her brothers and sisters because "She thought they had enough money of their own." On the day the will was executed the respondent drove Mrs. Rogles to the office of the attorney, but did not come into the office and was not present when the will was executed. After the will was executed the respondent returned and Mrs. Rogles left with him.

The contestants produced but one witness, Louise Metter, one of the appellants. The witness identified herself as a sister of the decedent who was on friendly terms with the decedent, visited her at her home two or three days at a time, and would call her on the phone. Nevertheless, decedent would not discuss with her anything about decedent's financial affairs, nor how she was going to dispose of her estate. The decedent, following the death of her husband, purchased a cottage on some land on which there was a lake and moved there. She was an inveterate fisherwoman, and spent most of her time fishing. Respondent would visit her at the lake and bring groceries to her but she, the witness, *had no knowledge that he was involved in any of the decedent's financial matters.* In De-

ccmber, 1968, the decedent sold the cottage near the lake and moved in with the respondent without notifying any of her brothers or sisters, and she remained there until sometime in 1969 or 1970 when she was put in a nursing home. According to this witness she was not happy while living in the Janssen home.

In support of the allegation that the testatrix was of unsound mind at the time the will was executed, evidence was offered by Louise Metter that Mr. Rogles died in 1956—the exact date is impossible to fix from the testimony of this witness, ranging from 10 to 12 years prior to Mrs. Rogles move to the lake property where she lived for a period of 9 years. Just prior to the death of her husband the testatrix learned that he was seeing another woman and as a result of this information she had no faith anymore, started "to cuss" and would become furious. Decedent was also under the care of a doctor in DeSoto, Missouri, for high blood pressure and hardening of the arteries and she would get shots in the knee because she was crippled. When this witness and other members of the family would go to visit Mrs. Rogles at the lake property they would have to bring their food—she would never offer them any food—and she would not let anybody in her house while she was away fishing on the lake, which, on occasion, consumed the entire day. Prior to her husband's death Mrs. Rogles was a moderate drinker; but thereafter she became a heavy drinker and on one occasion the witness had to take her into the house from the front porch because she'd had too much to drink. On cross-examination this witness admitted seeing the testatrix once or twice a year.

■ Appellants' arguments in support of their position that the issue of "undue influence" was a jury question are twofold: 1) that there is substantial circumstantial evidence of undue influence upon which to submit the case to the jury, and 2) there is a presumption of undue influence which arises when (a) a confidential or fiduciary relationship existed between the testator and the beneficiary, (b) the fiduciary is given a substantial bequest, and (c) the fiduciary was active in procuring the execution of the will. They have abandoned their contention of unsound mind since they have not briefed this point. State ex rel. Beeler v. City of Raytown, 453 S.W.2d 672, 674 [2] (Mo.App., 1970).

■ "Undue influence" has been defined as that influence which, by force, coercion or overpersuasion destroys the free agency and willpower of the testatrix. Switzer v. Switzer, 373 S.W.2d 930, 938 [7] (Mo., 1964). The law does not ban as undue the natural influence of affection or attachment or the desire to gratify the wishes of one beloved or trusted by the testator. Switzer v. Switzer, supra, l.c. 938. In determining whether the evidence was sufficient to make a submissible case on the issue of undue influence we must accept appellants' evidence as true and give their evidence the benefit of every favorable inference that may be legitimately drawn therefrom. Wilhoit v. Fite, 341 S.W.2d 806, 813 [4] (Mo., 1960). Nevertheless, a finding of undue influence may not be based upon mere speculation and conjecture, and motive and opportunity alone are not sufficient. Sweeney v. Eaton, 486 S.W.2d 453, 456 [7] (Mo., 1972). Even where found, "undue influence," to be effective in breaking a will, must have been present, in active exercise, and sufficient to destroy the free agency of the testatrix at the time of the making of the will, so that the will is not, in fact, her own will but that of the party who was exercising the undue influence. Sweeney v. Eaton, supra, l.c. 455.

■ Appellants take the position that while there is no direct evidence to support their charge of undue influence there is substantial circumstantial evidence to show undue influence to make a submissible case which should have been submitted to a jury for determination. Courts have often recognized the principle that "As a rule undue influence is not proclaimed from the

housetop, but is hidden like a candle beneath a bushel and concealed like fraud and deception, only appearing through carelessness and unguarded openings . . ." Wilhoit v. Fite, supra, 341 S.W. 2d l.c. 813; Coldwell v. Coldwell, 228 S.W. 95, 102 (Mo., 1921). For this reason undue influence need not be proven by direct and positive testimony but may be inferred from all the facts detailed in evidence. Wilhoit v. Fite, supra, 341 S.W.2d l.c. 813 [2].

■ A review of the evidence in the light most favorable to appellants' contentions fails to convince us that the trial court erred in directing a verdict for the respondent. It would serve no purpose to restate the entire evidence here, but the only evidence presented to the trial court showed an opportunity to exercise undue influence by reason of the residency of the testatrix in the home of the respondent during the autumn of her life and subsequent to the drafting and execution of the will under attack, the retaining of a lawyer by the testatrix who was an acquaintance of the respondent and who entered his appearance as attorney of record for the respondent, obtained an extension of time within which to file an answer to the appellants' petition and then, in conjunction with the attorney who conducted the trial on behalf of the respondent, signed as attorney for the respondent on the Answer filed thereafter. There is no evidence that other than conveying the testatrix to the scrivener's office respondent had anything to do with the preparation of the will, consulted with reference to its provisions, nor was even actually aware of what they were.[1] He was not present at any time when the testatrix discussed the will with her lawyer nor was he present anywhere in the attorney's office at the time the will was executed. We hold that this is not sufficient circumstantial evidence to authorize submission of the case to the jury on the ground of undue influence.

■ Nor, does the evidence support the contention of the appellants that they were entitled to go to the jury because of a presumption of undue influence which arises when 1) a confidential or fiduciary relationship existed between the testatrix and the beneficiary, 2) the fiduciary is given a substantial bequest, and 3) the fiduciary was active in procuring the execution of the will. This presumption is not available to the contestants until the confidential or fiduciary relationship is first established by the evidence, direct or circumstantial, and in our view of the evidence, considered most favorably from the appellants' point of view, there is no evidence to support such a finding.

Appellants rely on Simmons v. Inman, 471 S.W.2d 203 (Mo., 1971), Pasternak v. Mashak, 392 S.W.2d 631 (Mo.App., 1965), and Hesse v. Wagner, 475 S.W.2d 55 (Mo., 1971). Those cases are no aid. In both Simmons and Pasternak the legatees occupied the fiduciary relationship of attorney and counselor to the testatrix. In Simmons, 471 S.W.2d l.c. 206 [3] the court said: "The first requirement necessary to the presumption of undue influence, the presence of a fiduciary relationship between testatrix and beneficiary, is satisfied in this case by the relationship of lawyer and client." In Pasternak, the proponent, a lawyer who had drafted the will, admitted the fiduciary relationship, and in Hesse the legatee also admitted the existence of the fiduciary relationship in his testimony, 475 S.W.2d l.c. 58.

Other cases cited by the Appellants support the general principles relative to undue influence, but are distinguishable on their facts. Even in Switzer v. Switzer, supra, where there was much more evidence to support a finding of undue influ-

---

[1]. The record shows that on cross-examination the scrivener testified that he had prepared prior wills for the decedent wherein respondent was the legatee of the rest and residue of her property, real and personal, and from this he "assumed" that the respondent might know of the provisions in this respect.

ence than in this case, the court, 373 S.W. 2d l.c. 939, said: "The submissibility of undue influence is a close issue under the record before us."

A confidential relationship exists when one relies upon and trusts another in regard to the handling of property and business affairs, thus creating some fiduciary obligation. Davis v. Pitti, 472 S.W. 2d 382, 387 [5] (Mo., 1971). There is no evidence in this record that the respondent at any time handled or assisted in the handling of the testatrix' property or business affairs. Rather, Mrs. Metter testified on direct examination that she had no awareness that the respondent was involved with the decedent in any financial matters.

Having failed to establish the confidential relationship the appellants do not enjoy the benefit of the presumption of undue influence to make a submissible cause and the trial court did not err in so holding.

All concur.