Edward L. MANGAN,
Petitioner-Appellant,

v.

Joseph J. MANGAN, Jr., et al.,
Respondents-Respondents.

No. 9840.

Missouri Court of Appeals,
Springfield District.

May 10, 1977.

Benjamin J. Francka, Springfield, for petitioner-appellant.

Wayne T. Walker, Theo C. Salveter, Jr., Walker, Salveter & Stoner, Springfield, for respondents-respondents.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

HOGAN, Judge.

In this bench-tried will contest, the Circuit Court of Greene County has found that an instrument dated and executed February 23, 1972, is the Last Will and Testament of Ralph A. Mangan, deceased. Petitioner (contestant) Edward L. Mangan, the testator's brother, appeals. We affirm.

As material here, the record shows that the testator Ralph A. Mangan,[1] died August 22, 1972, at age 72. At the time of his death, testator was a widower who had no children.

On February 2, 1968, the testator executed a will, shortly before his wife's death. In substance this will provided that should the testator's wife die before the testator, all the testator's property would be divided equally between Edward L. Mangan (petitioner) and Joseph J. Mangan, Sr., the testator's brothers.[2] The validity of this will—when it was executed—is not in issue; the question is whether the 1968 will was revoked by the execution of either of the testator's two subsequent wills.

On November 16, 1971, the testator sustained a gunshot wound either as a result of an accident while cleaning his gun, or perhaps as the result of an attempt to take his own life. Testator was hospitalized for the treatment of that wound and he remained hospitalized until December 22, 1971, at which time he was moved to a nursing home. On February 26, 1972, the testator left the nursing home and took up residence with his brother Edward, the petitioner here. He remained with Edward until April 5, 1972, when he was again hospitalized with a bleeding ulcer, arteriosclerotic cardiovascular disease and other secondary ailments. On May 9, 1972, the testator was again moved to the nursing home where he remained until he expired August 22, 1972. On June 6, 1972, testator was adjudicated an incompetent.

While the testator was in the nursing home from December 1971 to February 1972 he executed two wills. The first of these wills was executed January 19, 1972, and the second on February 23, 1972. The provisions of these wills differ considerably from those of the February 1968 will in that Edward L. Mangan's share of the estate is greatly reduced, and that part left to Joseph J. Mangan, Jr., is substantially increased.

The contestant (petitioner) sought to invalidate both wills executed in 1972,[3] on the

---

1. Who was also known as R. A. Mangan and Bill Mangan, and is so referred to in the transcript.

2. A specific bequest of a "yellow gold diamond ring" and a "yellow gold diamond stick pin" was made to testator's nephew Joe Mangan,

Jr., one of the respondents (proponents) in the trial court.

3. The Probate Court of Greene County admitted the will last executed to probate; by agreement, the contestant's (petitioner's) evidence was received before the proponents' when the cause was tried in the circuit court, but of

grounds that the testator lacked testamentary capacity and was unduly influenced by Joseph Mangan, Jr., and his wife, Helen, on both occasions. To support his contention that the testator lacked testamentary capacity in 1972, petitioner had some evidence that as early as the summer of 1971, Ralph A. Mangan was confused and disoriented, and while he was hospitalized in 1971 and thereafter was thoroughly disoriented because of his advanced age, arteriosclerosis and the trauma of the gunshot wound. The contestant further had evidence that on January 19, 1972, the testator also executed a warranty deed conveying the same real property to proponents Joe and Helen Mangan as was devised to them in the will of the same date. Moreover, it appears that in the final will, this property was devised to Joseph Mangan, Sr., for life then to Joseph Mangan, Jr., and another nephew, Bernard J. Mangan. There was evidence testator had no nephew named Bernard J. Mangan. The petitioner also contended, and had some proof to the effect, that Joe and Helen Mangan managed the testator's business affairs, insinuated themselves into his confidence and thereby unduly influenced him in the execution of the 1972 wills and the deed of January 19, 1972.

■ The proponents had the evidence of many witnesses that during his first stay in the hospital and later at the nursing home testator appeared competent. Further, the proponents' witnesses more or less uniformly stated that the testator was a self-reliant person who attended to all his business affairs even after the 1972 wills had been executed. The substance of their evidence concerning the will and deed of January 19, 1972, was that the property involved was under the testator's sole control, implying that it would be reasonable for a layman to believe he could still devise the property. There was testimony that Helen Mangan contacted an attorney about the January 19, 1972, will upon the testator's instruction, and that the attorney went over that will in

detail with the testator. The attorney who prepared the final will—the will admitted by the Probate Court of Greene County—was called, and having detailed his past acquaintance with the Mangan family and having gone over in some detail his observation of the testator prior to the actual execution of the February 23, 1972, will, gave it as his opinion that the testator was of sound and disposing mind, that testator "was capable, competent and that he did know the—what he wanted and what the objects of his bounty were." The testator, according to this attorney, "mentioned dollar amounts . . . street addresses and that sort of thing"; the testator also "went over various names", mentioning a number of "nephews, cousins and so on." In substance, this attorney testified that at and near the time the February 23, 1972, will was drafted and executed, the testator was of sound mind, understood the ordinary affairs of life, knew the nature and extent of his property and the persons who were the natural objects of his bounty, and appreciated his natural obligations to those persons. Such, as this court has very recently pointed out, *Cockrum v. Cockrum*, 550 S.W.2d 202, are the requirements for testamentary capacity. *Lewis v. McCullough*, 413 S.W.2d 499, 505 (Mo.1967); *Sturm v. Routh*, 373 S.W.2d 922, 928[3] (Mo. 1964); *Crum v. Crum*, 231 Mo. 626, 638, 132 S.W. 1070, 1073[4] (1910).

■ In this court the petitioner has briefed and argued five assignments of error. The proponents—respondents here—have answered each point, but in addition complain that the contestant's brief is so deficient the appeal should be dismissed. In the circumstances, we do not find it so, even though it is technically subject to criticism because the "argument" part of the brief does not contain any specific page references to the transcript on appeal as required by Rule 84.04(h), V.A.M.R. Otherwise, the contestant simply questions the sufficiency of the evidence, a matter we

course the proponents had the burden to prove the validity of the instrument executed February 23, 1972. *Brug v. Manufacturers Bank &*

*Trust Co.,* 461 S.W.2d 269, 276[8] (Mo. banc 1970).

must consider anyway. Rule 73.01, para. 3(a). In this connection, we may observe that Rule 73.01, para. 3, as construed in *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976), requires us to affirm the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. We are further enjoined by *Murphy v. Carron*, supra, 536 S.W.2d at 32, to exercise our power to set aside a decree or judgment with caution in a court-tried case, and to affirm the judgment unless we firmly believe it is wrong. Further, the trial court, when sitting as the trier of fact, may believe all or none of the testimony of a witness, or accept it in part and reject it in part. *Cockrum v. Cockrum*, supra, 550 S.W.2d at 205; *Long v. Lincoln*, 528 S.W.2d 512, 513 (Mo.App.1975).

The contestant, as noted, has questioned the validity of both wills executed in 1972. All three wills were offered in the Probate Court, and it is true that under the present statute, § 473.083, RSMo Supp. 1973, the circuit court may decide the issue devisavit vel non as to several purported wills, provided those purported wills have been offered for probate. § 473.083, paras. 1 and 5; 3 Maus Missouri Practice § 288 (1960). Nevertheless, in the view we take of this appeal, it is unnecessary to decide the validity of the instrument of January 19, 1972. We think it was proper for the trial court to hear and consider evidence concerning the execution of the January 19 instrument, *Yant v. Charles*, 219 S.W. 572, 574[3, 4] (Mo.1920), but because both wills executed in 1972 expressly revoked all former wills, it follows that the will of February 23, 1972, if it is valid, is the Last Will and Testament of Ralph Mangan.

 The contestant argues at length that a presumption of undue influence arises when it is shown that 1) a confidential or fiduciary relationship existed between the testator and the beneficiaries; 2) the beneficiary or beneficiaries were given a substantial bequest or devise; 3) the beneficiary or beneficiaries were active in pro-

curing the execution of the will. We agree, and further agree that once the presumption is raised, it does not disappear from the case but raises an issue for the trier of fact. *Cockrum v. Cockrum*, supra 550 S.W.2d at 208. Nevertheless, the law does not ban as undue the natural influence of affection or attachment or the desire to gratify the wishes of one beloved or trusted by the testator, *Switzer v. Switzer*, 373 S.W.2d 930, 938 (Mo.1964); *Glover v. Bruce*, 265 S.W.2d 346, 353[7] (Mo.1954); *Metter v. Janssen*, 498 S.W.2d 581, 583[3] (Mo.App.1973), cert. den., 414 U.S. 1115, 94 S.Ct. 848, 38 L.Ed.2d 742 (1973), and the fact that the testator made an unequal or even unjust distribution of his property does not of itself support an inference of undue influence. A man has the right to will his property to whomsoever he chooses, and the beneficiary in his will is not bound to account for the choice, *Hammonds v. Hammonds*, 297 S.W.2d 391, 395 (Mo.1957); *Schierbaum v. Schemme*, 157 Mo. 1, 12, 57 S.W. 526, 528 (1900), particularly when, as here, the discrimination is made between collateral, rather than lineal heirs. We think there is considerable merit in the respondents' argument that Joe Mangan, Jr., had been the object of the testator's affection and respect for many years, and that the will of February 23, 1972, represented no drastic change in the testator's plans. In any event, it was incumbent upon the petitioner to prove the existence of a confidential relationship in order to avail himself of the presumption of undue influence, *Metter v. Janssen*, supra, 498 S.W.2d at 584, and the evidence, considered as a whole, does not compel any such conclusion. It is true enough that proponents Joe Mangan, Jr., and his wife Helen attended to the testator's business affairs from time to time, but the record clearly permits the inference that they did so only when the testator was too ill to take care of business, and that when his health improved, testator took charge again. The testimony of witness Charles LeGrande is illustrative. His testimony was that on March 3, 1972—after the final will was executed and before the testator's final hospitalization—he saw the tes-

tator at 1630 N. Clay, in Springfield, at the testator's request. At that time, LeGrande talked to the testator for "about an hour", made an estimate of the cost of a new roof and made a contract to put a new roof on the dwelling. After LeGrande had finished, testator wrote him a check for $520, and signed the check. Without going into evidentiary detail, we may say the record justifies the conclusion that the testator and other members of his family were independent to the point of being quarrelsome, and that the testator had the proponents attend to his business affairs only when he was physically unable to do so, not because he reposed any particular confidence or trust in them.

We reach the same conclusion on the issue of testamentary capacity. There was evidence from two physicians that at times the testator was confused and disoriented as a result of cerebral arteriosclerosis and the medication given him to palliate his anxieties. However, these physicians testified, in substance, that patients suffering from cerebral arteriosclerosis enjoy periods of lucidity, that the testator was given a drug to improve his cerebral circulation, and both physicians were, in the event, unable to state with reasonable certainty that the testator lacked testamentary capacity on February 23, 1972. The attorney who prepared the final will testified that upon the basis of his observation, the testator had testamentary capacity when he executed that will. The attorney's evidence was competent upon the issue of mental capacity, *Norris v. Bristow*, 358 Mo. 1177, 1189, 219 S.W.2d 367, 371[9], 11 A.L.R.2d 725, 730 (1949), and may well have been accepted by the trial court. The contestant makes a great deal of the fact that the testator mistook the first names of some of his collateral kindred. Contestant argues that this lack of memory, if such it was, clearly demonstrates testamentary incompetence. We do not agree; the testator had a great many kinsmen, and he could have had testamentary capacity without knowing whether all of them were alive, and without remembering the names of all his nephews. *Hall v. Mercantile Trust Co.,*

332 Mo. 802, 814, 59 S.W.2d 664, 669[3] (1933); *Winn v. Matthews*, 235 Mo.App. 337, 346, 137 S.W.2d 632, 635[1, 2] (1940); *Havens v. Mason*, 78 Conn. 410, 62 A. 615, 616 (1905); 79 Am.Jur.2d Wills § 72 (1975).

For the reasons indicated, the judgment of the trial court is affirmed. It is ordered that a copy of the mandate of this court be certified to the Probate Court of Greene County, Missouri, so that court may continue to administer upon the estate of Ralph A. Mangan, deceased.

All concur.