**In re ESTATE OF Harold D. PAYNE, Deceased, Eldon Young, Respondent,**

v.

**Charles W. HOWELL and Delphia I. Howell, Appellants.**

**No. WD 34310.**

Missouri Court of Appeals, Western District.

May 22, 1984.

John M. Belisle and J.D. Baker, Osceola, for appellant; Belisle & Baker, Osceola, of counsel.

Ewing, Carter, McBeth, Smith, Gosnell, Vickers & Hoberock, Gerald D. McBeth, Nevada, for respondent.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

PRITCHARD, Presiding Judge.

In this discovery of assets proceeding, the only issue presented is the ownership of a checking account in the Metz Banking Company, Metz, Missouri, as between respondent and appellants, in the amount of

$2,208.76. The trial court found that plaintiff's decedent, Harold D. Payne, was the owner of the account, and that there existed a confidential relation between the decedent and appellants, and entered judgment against them. The parties join issue upon whether there was created a joint account with survivorship in the Metz Banking Company, and the resolution of that issue turns upon whether respondent established a confidential relationship between the decedent and the purported survivor of the account as a joint tenant, appellant Charles W. Howell, and whether there was presumptively undue influence exercised by him upon decedent.

Appellant, Charles W. Howell, was called by respondent as a witness. He testified that he first became acquainted with decedent in July, 1981, when he rented his 80 acres in Cedar County, near Virgil City, Missouri, for pasture. On September 1, 1981, Howell took decedent into his home in Walker, Missouri. Howell was with decedent on September 11, 1981, when decedent closed his $6,941.16 account with the Farmers State Bank, Schell City, Missouri, and went with him to the Metz Banking Company, Metz, Missouri, where on the same day a new account was opened. The signature card in that bank was signed by H.D. Payne and Charles Howell and was payable to either or survivor as joint tenants. Delphia Howell was an authorized signature on the card, but was not named as a joint tenant. Howell had a checking account and did most of his banking at the Metz Banking Company at the time. After the money found its way into the Metz Banking Company, a part (apparently $2,448.47 on December 12, 1981), was used to pay off a loan on the 80 acre Cedar County farm, which was about the same time the farm was deeded by decedent to Howell.

Howell acknowledged that he had taken decedent to Richard Scott, a Lamar, Missouri, attorney, for the purpose of drawing a power of attorney. Scott had represented Howell in another unrelated matter prior to that time. Howell further acknowledged that he had the power of attorney.

Richard Scott testified that he had practiced law in Lamar for six years. Howell and decedent came to his home and wanted a power of attorney to remove funds from a bank and to handle decedent's business activity. Howell usually related what they wanted. Scott drafted the power of attorney, but could not locate a copy of it. Scott's recollection, however, was that it was for a fairly limited purpose—it entitled them to open a bank account in decedent's name and those of Howell and his wife. It was to be a joint account *without* a right of survivorship. Scott later prepared a warranty deed and a farm lease on the 80 acre farm.

After decedent moved in with the Howells, they managed his checking account. They gave decedent a home, three meals a day, a bath a week, and clean clothes. Decedent was then just completely dependent upon Howell. Previously, decedent had authorized Mrs. Nora Dunfield to write checks on his account at the Schell City Bank. She testified that he had a stroke, he could hardly see, and there was difficulty with his hands—it was hard for him to sign his name. The Dunfields, who ran a little store in Virgil City, looked after decedent, cooking his food twice a day, cutting and carrying in his wood, and mowing his lawn.

On February 19, 1982, a fire was discovered in decedent's room in the Howell home, apparently caused by an electric blanket, and the home and contents were destroyed. Decedent was badly burned, and was taken by neighbors to the Appleton City, Missouri, hospital. He was then taken to the burn center in Columbia, Missouri, where he died about three days later.

Edward T. Stonebraker, president of the Farmers State Bank, Schell City, Missouri, testified that decedent had a checking account there which he closed on September 11, 1981, in the amount of $6,941.16. On November 18, 1980, Nora Ann Dunfield was shown as an authorized signature. Stonebraker thought that someone else was with decedent when he closed the ac-

count, but could not recall who it was. He did recall that all conversations were with decedent.

Scott Buerge, president of the Metz Banking Company, testified that decedent came in with Howell on September 11, 1981, and opened the bank account, jointly between the two with a right of survivorship in Howell, who had been a customer of the bank for five or six years. Howell closed the account, having a balance of $2,208.76, in March, 1982, and Howell discussed paying off the farm loan, with Howell doing most of the talking.

The evidence clearly shows that decedent gave Howell and his wife his power of attorney to take care of his business activity. It entitled them to open a bank account in the names of the three, but it was to be *without* a right of survivorship. The existence of the power of attorney is a significant fact in this case, *Godsy v. Godsy*, 504 S.W.2d 209, 212[2–4] (Mo.App.1973), for it shows that a confidential relationship was present. "A confidential relationship exists when one thus relies upon and trusts another in regard to handling property and business affairs, thereby creating some fiduciary obligation. *Metter v. Janssen*, 498 S.W.2d 581, 585[10] (Mo.App.1973)." *Godsy*, supra, p. 212[2–4]. From this business relationship, and decedent's total dependency upon the Howells to look after them, the confidential relationship was established and from that flows the presumption or inference of undue influence, especially, as here, where the evidence shows that Howell was present and active in procuring the change in banks and the nature of decedent's previous account. *Godsy*, supra, p. 213[7,8], and cases cited. See also *Keller v. Collison*, 395 S.W.2d 729, 735[6] (Mo.App.1965). Note here, also, that the Metz Banking Company account provided for survivorship *contrary* to the provision of the power of attorney, another indicia of activity in producing the survivorship account.

The span of time within which Howell became acquainted with decedent upon renting his pasture land in July, 1981, until September 11, 1981, when the survivorship account in the Metz Banking Company was created, is short. The events in that short span of time are significant. Howell took decedent to his own lawyer, Scott, in Lamar, where the power of attorney was drafted. Howell went with decedent to the Schell City Bank to withdraw the funds, and then to the Metz Bank (Howell's bank) where the survivorship account was created. Then Howell, doing most of the talking, was with decedent when the farm loan was paid off, and Howell's lawyer, Scott, prepared the warranty deed of the Cedar County land to the Howells (the result of the suit to set aside that deed not being shown by this record). The whole of the evidence sustains the trial court's judgment under the standards for review of *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

The judgment is affirmed.

All concur.