Lawrence Owens and Iva Jane
OWENS, Plaintiffs-Appellants,

v.

UNION ELECTRIC COMPANY, Lester
Greer and J.M. Rutledge,
Defendants-Respondents.

No. 14342.

Missouri Court of Appeals,
Southern District,
Division Two.

May 18, 1987.

Hal E. Hunter, Hunter & Hunter, New Madrid, for plaintiffs-appellants.

David E. Blanton, Blanton, Rice, Sidwell & Ottinger, Sikeston, for defendants-respondents.

HOGAN, Judge.

Plaintiffs Lawrence and Iva Jane Owens brought this action against the defendants on the theory that the combined and concurring negligence of defendants Greer (acting as agent and servant of J.M. Rutledge) and The Union Electric Company caused a "power surge" through the power lines which served plaintiffs' residence, as a result of which plaintiffs' residence was consumed by fire. The trial court directed a verdict for the defendants at the close of the plaintiffs' evidence. Plaintiffs thereafter appealed, but dismissed their appeal as to defendant Union Electric. The broad question before the court is whether the trial court properly directed a verdict in favor of defendants Greer and Rutledge on the ground that Greer's conduct, if negligent, was not a proximate cause of the fire. We conclude there was no error and affirm the judgment.

The merits of the appeal do not require an extensive or technical recitation of the background facts. Between 5 and 6 p.m. on April 27, 1983, defendant Greer was driving a tractor north on Route E in New Madrid County. Greer was pulling an implement referred to as an "eight-row disk." As he was driving past the Owens residence, Greer struck and cracked a utility pole across the road from that structure. Gary Brown, who was in the neighborhood

at the time, testified he saw Greer's tractor strike the pole, but did not see what damage was done. Plaintiff Iva Jane Owens heard the collision between the tractor and the pole, but did not actually see it.

Greer informed Mrs. Owens that he had struck the pole; Mrs. Owens called Union Electric. Mr. L.V. Stevens, a supervisor for Union Electric, found the pole to be partially broken, leaning toward the plaintiffs' residence. What is referred to as the "primary" line (a 7,200 volt line) had come loose from its insulator, but was being held to the pole by a tie wire. Mr. Stevens "decided [it] would hold [until] the next day...." Harry Turner, a Union Electric lineman, disconnected the current in order to attach the primary line to the insulator. The line was then energized; Turner drove by the Owens residence and observed that the outside light and the lights in the house were working.

About 9 a.m. on Thursday, April 28, two linemen employed by Union Electric undertook to replace the damaged pole. As they were preparing to "frame"[1] the replacement pole, the damaged pole cracked and fell over a boom truck. The damaged pole never hit the ground nor did the primary, high-voltage line, strike anything. Some secondary lines did fall across the road, causing some damage to a utility truck and to a passing motorist's vehicle. When the secondary lines hit the vehicles and touched the ground, a secondary fuse blew, "de-energizing" the secondary lines. Power to the primary line was disconnected. The new pole was then set and "framed." Power was then restored.

Plaintiffs had evidence that their electrical appliances operated erratically after the utility pole was damaged. Plaintiff Iva Jane Owens testified that her lights and her television set were working well until power was restored on Wednesday evening. However, Mrs. Owens testified that on Wednesday evening, about 10:30 p.m., her television set began "fading in and out" and she noticed the smell of burning

rubber. Mr. Owens testified that when he arrived home from work about 12:30 a.m. on Thursday, he also could smell rubber burning but could not find the source of the smell. Owens also noticed that the kitchen light would "get real bright and real dim."

This erratic behavior of the appliances continued Thursday and into Friday. Mrs. Owens' mother, who lived in a trailer near the Owens residence and whose electric service came from the same source as that furnished to the Owens residence, experienced the same difficulties with her appliances as did Mr. and Mrs. Owens. There was also evidence that a 220–volt wall receptacle into which Mrs. Ervin's clothes dryer was plugged was "crystallized" or fused during this period. The Owens residence was destroyed by fire on Friday afternoon, April 29.

We have recited the operative facts in rather cursory fashion because it is clear to us plaintiffs never established that any act or omission on the part of defendant Greer could be considered a "proximate cause" of the plaintiffs' damage. As we have said, it is apparent from the record that plaintiffs' theory of the case was that the fire which destroyed their residence was caused by a "power surge" or "spike" which resulted from the falling of the secondary power lines while the utility pole was being replaced on Thursday, April 28. To establish that the fire which destroyed their residence was a result of negligence in erecting the new utility pole, plaintiffs called an expert witness to whom several hypothetical questions were propounded.

On this appeal, the several points briefed by the appellants deal with the trial court's sustention of objections to the hypothetical questions put to the expert witness. These points may have some merit, but they are so indifferently briefed that we would be obliged to become advocates for the plaintiffs to rule confidently on the assignments of error made. We have examined the plaintiffs' assignments of error dealing

---

**1.** "Frame" in this context means to "[p]ut the hardware on the [new] pole before [it is set] in   the ground."

with the propriety of the hypothetical questions put to their expert, Mr. Graves, and conclude that even if there was error in sustaining objections to some of the questions put to him, the error was not prejudicial. Error without prejudice is no ground for reversal. Rule 84.13(b); *Neavill v. Klemp*, 427 S.W.2d 446, 448 (Mo. 1968); *Pratt v. Cudworth*, 637 S.W.2d 720, 724 (Mo.App.1982).

At the close of plaintiffs' evidence, defendants Greer and Rutledge filed a written motion for a directed verdict upon the ground, among others, that after the first pole was cracked or broken, they had neither the authority nor the skill to replace the cracked or broken pole; that the only affirmative step either defendant could have taken was to notify Union Electric, and that the evidence established no causal connection between their act or omission and the resulting fire. Even though the point is stated in conclusional language, we consider it well taken. As we read the record, the trial court's intention was to sustain the motion for directed verdict "as presented" and such a ruling would include the ground that causation—"proximate cause"—had not been established.

■ Speaking generally, a trial court may only sustain a motion for directed verdict when the facts in evidence and the reasonable inferences to be drawn therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ. *Herberholt v. dePaul Community Health Center*, 625 S.W.2d 617, 624 (Mo. banc 1981); *Baumle v. Smith*, 420 S.W.2d 341, 344 (Mo.1967); *Chappell v. City of Springfield*, 388 S.W.2d 886, 892 (Mo.1965). Nonetheless, a case is not to be submitted to a jury unless each and every fact essential to liability is predicated on legal and substantial evidence, and the question whether the evidence in a particular case is substantial is one of law for the court. *Houghton v. Atchison, Topeka & Santa Fe Railroad Co.*, 446 S.W.2d 406, 409 (Mo. banc 1969); *Gibson v. Newhouse*, 402 S.W.2d 324, 327–28 (Mo.1966). As a matter of law, the fact essential to liability which was not established here was the fact (or

element) of "proximate cause" essential to recovery by the plaintiffs.

We do not propose to discuss the cloudy and elusive concept called "proximate cause" at length. For our purposes, it is sufficient to define "proximate cause" as our Supreme Court did in *Domitz v. Springfield Bottlers*, 359 Mo. 412, 415, 221 S.W.2d 831, 832 (1949), as "such a cause as [operates] to produce a particular consequence without the intervention of an independent cause, in the absence of which the injuries would not have been inflicted."

Once again, it is clear from the hypothetical questions that plaintiffs were attempting to show that the immediate or "active" cause of the fire which destroyed their residence was a "power surge" which occurred as a result of the secondary power lines falling across the road on Thursday, April 28. The plaintiffs established that Greer struck the pole either with a tractor or a disk which he was towing, but there is no fact or circumstance in the record tending to indicate that Greer *negligently* struck the pole.

■ It is plaintiffs' failure to establish Greer's conduct as a "proximate cause" of the fire, however, with which we are concerned. By definition, a "proximate cause" is a cause which operates without the intervention of an independent or superseding cause. One notion or idea of superseding or intervening cause has been expressed thus:

> " '*Where a second actor* [here Union Electric] *has or should have become aware of the existence of a potential danger created by the negligence of an original tort-feasor*, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause.' " (Our emphasis.)

*Horton v. Swift & Company*, 415 S.W.2d 801, 802[1, 2] (Mo.1967); *Duke v. Missouri Pacific Railroad Company*, 303 S.W.2d 613, 617[4] (Mo.1957); *Christie v. Weber*, 661 S.W.2d 840, 843 (Mo.App.1983); *Clymer v. Tennison*, 384 S.W.2d 829, 835 (Mo.

App.1964). See also *Lock v. Packard Flying Service, Inc.*, 185 Neb. 71, 173 N.W.2d 516, 519[6–11], 41 A.L.R.3d 1313, 1318 (1970).

 On Wednesday afternoon, shortly after defendant Greer struck the pole, Union Electric's employees took control. Mr. Stevens made the decision, after inspection, to leave the cracked pole in place. The potential dangers were open and obvious and were, or should have been, apparent to the utility through its employees. Greer, on the other hand, had no control or right of control over the cracked pole. Any negligence on his part had ceased to be active and had become passive. If the fire was caused by a power surge created while the damaged pole was being replaced, Union Electric's acts were clearly the intervening and superseding cause of the plaintiffs' damage. See again *Duke v. Missouri Pacific Railroad Company*, 303 S.W.2d at 618[6]. It follows that the trial court properly directed a verdict because plaintiffs failed to establish Greer's negligence, if any, as a proximate cause of the fire. The judgment is affirmed.

PREWITT, P.J., and FLANIGAN, MAUS, JJ., concur.

Duane Edward Schreimann, Jefferson City, Michael E. Waldeck, Thomas B. Alleman, Niewald, Waldeck, Norris & Brown, Kansas City, for appellant.

Walter D. McQuie, Montgomery City, for Koelling.

P. Dennis Barks, Hermann, for Kautz.

George Dale Reesman, Boonville, for Bulen.

Donald K. Althauser, Hermann, for Benefit Trust.

William Arnold Hellmich, Chesterfield, for Missouri Pacific.