Kathleen JONES and Jeneva Newton,
Plaintiffs–Respondents,

v.

Robert C. WALKER, et al.,
Defendants–Appellants.

No. WD 40639.

Missouri Court of Appeals,
Western District.

July 25, 1989.
Rehearing Denied Aug. 29, 1989.

James G. Spencer, Milan, for defendants-appellants.

Harry C. Farr, John C. Slavin, Kirksville, for plaintiffs-respondents.

Before BERREY, P.J., and MANFORD and NUGENT, JJ.

BERREY, Judge.

Appeal from an adverse ruling in a court-tried case involving a will contest. The trial court found that decedent, Orville Woods, was unduly influenced by appellants and that the "paper writing" of December 5, 1975, was not decedent's Last Will and Testament. Affirmed.

Appellants present two points on appeal: (1) that the trial court erred in finding undue influence as that finding was not supported by substantial evidence; and (2) that the trial court erred in finding undue influence as that finding was against the weight of the evidence.

Orville Woods, a resident of Adair County, Missouri, died on August 6, 1980. His sisters, respondents Kathleen Jones and Jeneva Newton, filed suit contesting a writing dated December 5, 1975, adjudged by the probate division to be Woods' Last Will and Testament. Appellants were devisees under the purported will of December 5, 1975. Respondents contended that the 1975 document was not valid as Woods' will and that a valid will existed dated December 28, 1971. Respondents' initial petition alleged that the purported 1975 will was made by Woods while he was of unsound mind and of weakened mental condition. Count II of that petition alleged that the purported will was made as a result of the undue influence of Robert C. Walker and Leona M. Walker. The petition also asked the court to set aside a warranty deed to a tract of land purchased March 18, 1976, nearly four months after the writing of December 5, 1975. The land was placed in the names of Robert Walker, Leona Walker and Orville Woods, as joint tenants with right of survivorship.

The trial court found in appellants' favor on all but Count II of the petition stating that, "the Court finds by reason of the undue influence of Robert C. Walker the paper writing of December 5, 1975, was not the Last Will and Testament of the decedent and the will of December 28, 1971, is found to be Decedent's Last Will and Testament." It is this finding which is challenged in the instant case.

Orville Woods was born on December 14, 1914. He spent most of his adult life in California. After his wife Sybil died in 1971, he moved in with his sister, Kathleen Jones who lived in Boise, Idaho, where he stayed for about three months. Woods next moved in with his other sister, Jeneva Newton, who lived in Ashland, Oregon. Both of his sisters testified as to Woods' excessive drinking. Kathleen estimated that her brother consumed a twelve-pack of beer every other day. After he left Kathleen's he drove to Jeneva's but ended up getting hopelessly lost. When Jeneva came to get him she found him drunk. While he stayed with Jeneva, Woods would sometimes urinate in a wine bottle or urinate out a window, even though he had a bathroom available.

Woods moved back to Missouri in December, 1972. He remarried, but was subsequently divorced from his second wife, Elizabeth. Elizabeth testified that Woods drank all the time saying that, "He had a can of beer in his hand all the time, cigarettes, can of beer, not eating." Furthermore, while they were married many people came to the house to borrow money from him and she never saw them repay Woods.

Appellant Robert Walker's first contact with Woods came in the fall of 1975 about the same time as Woods' divorce from Elizabeth. Walker, who did volunteer work with the Kirksville Red Cross, met with Woods at Woods' home in Kirksville. Walker arranged to transport Woods to a hospital in Columbia for treatment of his prostate problems. Woods was admitted to the hospital on October 22, 1975, and underwent prostate surgery. He was released on November 4, 1975, with no complications.

The day after Woods was released from the hospital, Walker took him to see a Kirksville attorney, Ed Jayne. At that meeting Woods indicated that he wanted everything to go to his two sisters and his brother equally. Walker was present at this meeting. Jayne drew up a draft of the proposed will. Walker then called Jayne and told him that Woods had changed his mind and wished to leave everything to Walker and his wife. Walker brought Woods back to Jayne's office where Jayne interviewed Woods alone about the proposed change in his will. He asked Woods questions about where he lived and who his doctor was. Jayne also asked Woods the name of Walker's wife. Woods did not know. Jayne did not prepare the amended will and told Walker that on the phone when he called.

Also, on November 5, the same day that Walker first took Woods to Jayne's office, Walker took Woods to the First National Bank and had his name placed on Woods' safety deposit box. Walker initiated three more contacts with Jayne regarding a contract that Woods had signed for the sale of some real estate. Walker seemed interested in Jayne's suggestion of a guardianship for Woods but became very angry when he learned that the public administrator would quite likely be appointed as Woods' guardian and left Jayne's office.

On November 24, 1975, Walker took Woods to the office of Leman Atherton an attorney who practiced general law in Milan, Missouri, and who had previously represented the Walkers. Woods and Atherton discussed Woods' divorce. On November 28, 1975, Woods returned and discussed his will with Atherton. On the day the will was signed, December 5, 1975, Walker brought Woods to Atherton's office and waited in Atherton's waiting room.

Woods moved in with the Walkers in February, 1976, and stayed with them until he was taken to the hospital later that summer. Woods remained in the hospital until his death in 1980.

■ Appellants first contend that the trial court's finding of undue influence was not supported by substantial evidence. It must be remembered that the review of this court-tried case is governed by Rule 73.01 and the decision of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The decision of the trial court must be affirmed unless there is not substantial evidence to support it, it is against the weight of the evidence, or it has erroneously declared or applied the law. *Id.* at 32. In a case involving a will contest the burden of proving undue influence rests squarely on the contestants. *Hodges v. Hodges*, 692 S.W.2d 361, 366 (Mo.App.1985). "A presumption of undue influence arises if: (1) a confidential or fiduciary relationship existed between the testator and a beneficiary; (2) the beneficiary has been given a substantial benefit by the will; and (3) the beneficiary caused or assisted in causing the execution of the will." *Disbrow v. Boehmer*, 711 S.W.2d 917, 925 (Mo.App. 1986).

There are several other factors that courts have examined as well in the determination of undue influence. These include evidence of the health, physical and mental, of the testator; the opportunity a beneficiary might have to influence the testator; whether an unnatural disposition of the property has been made in the will; and if the bequests in the will constitute a change from a former will. *Id.*

■ In the instant case there is substantial evidence that undue influence was exerted over Woods by Walker and thus it cannot be said that the trial court was clearly erroneous in its decision. Examining the components of undue influence more closely reveals a striking pattern in the case at bar. The first element to look at is the relationship between the testator and beneficiary and ask whether some confidential or fiduciary relationship existed. *Id.* Certainly there is evidence of this type of relationship existing here. After Woods was released from the hospital Walker was heavily involved in Woods' business affairs. By November 5, 1975, Walker was participating in a conference with Jayne about Woods proposed will. His name went on Woods' safe deposit box. On Walker's recommendation Woods sold two properties

and the sale proceeds were placed in a joint account with the Walkers. An insurance policy of Woods was changed naming Walker as beneficiary. According to testimony, Woods was heard to refer to Walker as his "business manager."

The second element to examine is whether the beneficiary has been given a substantial benefit by the will. *Id.* Walker and his wife were made the principal beneficiaries of Woods' will. The writing of December 5, 1975, made a substantial change from an earlier will executed by Woods in his disposition of property.

Finally, the last element of the presumption requires the beneficiary be active in causing the execution of the will. Walker originally drove Woods to meet with attorney Jayne. On November 6, 1975, he phoned Jayne telling him that Woods had changed his mind and wished to make the Walkers his beneficiaries. Furthermore, when Jayne balked, Walker took Woods to attorney Atherton, who, incidentally, had represented Walker both before and after the drafting of the will. Appellant's Point I is denied.

Appellant next contends that the trial court erred in its finding of undue influence because that finding was against the weight of the evidence. Specifically, appellants argue that since the trial court found the testator was of sound mind [1] at the time of the execution of the December 5, 1975, will and also found that there was no undue influence exerted on Woods' March 18, 1976, purchase of a farm which was held in joint tenancy by Woods and the Walkers, the finding of undue influence in regard to the document of December 5, 1975, was against the weight of the evidence.

■ Undue influence is a separate concept from that of unsound mind. In Missouri, the test of whether a testator has a sound and disposing mind looks at whether he has the mental capacity to understand the nature and extent of his property and the persons who are the natural objects of his bounty. *Disbrow v. Boehmer, supra,* 711 S.W.2d at 924. Undue influence, on the other hand, involves such influence so as to destroy the free choice of the testator. *Hodges v. Hodges,* 692 S.W.2d 361, 366–67 (Mo.App.1985). To meet this test it must be shown that the will is not that of the testator but that of the person exercising influence over him. *Id.* There simply exists no conflict in the trial court's decision given these principles. The court need not find a person to be of unsound mind in order to find he has been unduly influenced.

■ The trial court's finding that the transaction of March 18, 1976, was free of undue influence does not negate this result. The distinguishing element here is time. The trial court points this out saying, "[T]he deed to the real estate was executed on March 18, almost four months after execution of the will, and during that time Mr. Woods had actually lived with Mr. Walker at his home in Novinger and a great deal more time had gone by." The trial court's finding was not clearly erroneous nor against the greater weight of the evidence. Appellants' Point II is denied. The judgment of the trial court is affirmed.

All concur.