Jere Lyn DUVALL, Respondent,

v.

Robert C. BRENIZER and Phyllis Brenizer, Appellants.

No. WD 43704.

Missouri Court of Appeals, Western District.

Nov. 12, 1991.

Kenneth C. Hensley, Independence, for appellant.

R.E. Moulthrop, Bethany, for respondent.

Before LOWENSTEIN, C.J., and TURNAGE and FENNER, JJ.

LOWENSTEIN, Chief Judge.

Duvall is the personal representative of the estate and daughter of Mrs. Ora Brenizer. Duvall brought a petition for discovery of assets, attempting to have certain pre-death transfers from the testator to her son Robert Brenizer and his wife (hereafter "Robert" or "appellants") set aside on the basis of undue influence. The two count suit concerned the transfer of a bank account and stock certificates to Robert, and the deed of a farm to Robert's two children. The court overruled Robert's motion for a directed verdict at the close of Duvall's case, as well as the same motion made at the close of all evidence. The jury verdict and judgment was for Duvall on the bank account transfer and stock purchase, and for Robert on the farm transfer. Robert and his wife appeal on the sole issue that Duvall failed to make a submissable case of undue influence on the portion of the verdict and judgment adverse to appellants.

When she died, decedent Ora Brenizer was a widow in her early 80's. She was survived by the son and daughter involved in this suit. She was the sole owner of the family farm in Harrison County. Since her husband's death, Mrs. Brenizer had resided on her farm, or with her daughter, Jere Duvall. Mrs. Brenizer's son, the appellant, had also periodically resided on the farm for some 40 years. In the early fall of 1985, Mrs. Brenizer and her son Robert apparently became involved in a family quarrel, which culminated in Mrs. Brenizer's departure for the California home of her daughter. Before leaving, she executed her will on September 26, dividing her property equally between her two living children and the survivors of a deceased son. On the same day, Mrs. Brenizer went to the First National Bank in Bethany, where she discovered that her $25,000 CD account now included Robert's name as joint account holder. Furthermore, $17,000 of the account had apparently been transferred in 1984, to another joint CD. Finally, Robert had used the remaining $8,000 of the account to purchase 400 shares of the bank's stock, which now had a cash value far below the $8,000 invested. The shares were issued in the name of Robert and his wife.

Upon these discoveries, Mrs. Brenizer gave R.E. Moulthrop, her attorney of many years, written authority to access her accounts at the bank. Moulthrop then managed the transfer of the $17,000 to a bank account in Mrs. Brenizer's sole name. He also completed a transfer of the stock to Mrs. Brenizer's name alone, although

she had wanted an $8,000 cash payment since the shares had such a low market value. In a letter to Moulthrop, Mrs. Brenizer stated that she had not known her son had access to her account, that she never authorized a use of the $8,000, nor would she ever buy stock of any kind, and certainly not in someone else's name. In addition to the financial changes, Mrs. Brenizer had her son served with notice to vacate the family farm, and had Moulthrop retrieve the abstract to the farm from Robert's safety deposit box. The stock certificate and the abstract remained in Moulthrop's possession until 1986.

Following this unpleasant rift, disputes continued over insurance, continued tenancy, rent due, maintenance costs, and Mrs. Brenizer's personal belongings which remained at the farm. All communication between mother and son occurred through Moulthrop. However, in the fall of 1986, Mrs. Brenizer returned to Missouri to rent an apartment in Eagleville with the intention of mending relations with her son. The record is unclear as to the manner of reconciliation, but a few facts are clear and noteworthy.

On December 3, 1986, Donna L. Young, head bookkeeper at the Bank for 22 years, and acquainted with Mrs. Brenizer, received a call from Mrs. Brenizer. Young testified at trial that the bank had sent Mrs. Brenizer an acknowledgement that her son's name had been added to her account. Young testified that as the account then stood, Robert was a joint tenant with right of survivorship. This transaction is part of the subject of this appeal. To Young's knowledge, Mrs. Brenizer had not come to the bank to authorize this change. By telephone on December 3, Mrs. Brenizer told Young she had not authorized Robert's name on the account, and she wanted her son's name off the account. Young then discussed the matter with the bank president, who suggested Young travel to Eagleville to have Mrs. Brenizer sign the signature card as she wanted. Nick Shelby, chief executive officer at the bank and a personal friend of Robert, also accompanied Young to Eagleville on December 3, though Young did not know why he

did so. When the two bank representatives reached Mrs. Brenizer's, her son Robert was waiting for them in the parking lot; Shelby conceded that he had contacted Robert. Shelby then explained to Mrs. Brenizer that without Robert's name on the account, no one could write checks on it and care for her if she fell ill. Young testified that Mrs. Brenizer decided to leave the account as it was, and that Mrs. Brenizer's mind was "drastically changed" from when she had spoken on the phone. Young also testified that Mrs. Brenizer was not told that in addition to being able to write checks on the account, Robert would also be sole owner of the account upon Mrs. Brenizer's death. Shelby later drew up a memo of the visit, and asked Young to sign it. Young acknowledged that such memos were not normal procedure at the bank.

Eight days later, on December 12, 1986, Robert went to the office of attorney Hawley Kilpatrick, and requested a deed drawn up to transfer the tillable portion of the farm from Mrs. Brenizer to Robert's sons. Kilpatrick, who did not know Mrs. Brenizer, accompanied Robert to Mrs. Brenizer's residence, at Robert's request, to notarize her execution of the deed. Kilpatrick testified most emphatically that Mrs. Brenizer appeared completely competent to convey her land. In fact, the jury determined this deed to the grandchildren to be free from undue influence, and the personal representative Duvall has not appealed this verdict. Still, Kilpatrick testified that it would have been far simpler and less time-consuming to have a notary near Mrs. Brenizer's home perform the chore.

Also on December 12, 1986, Mrs. Brenizer requested by letter drawn by Kilpatrick, that Moulthrop deliver the farm abstract, the 400 shares of stock in Mrs. Brenizer's name, and any other documents of Mrs. Brenizer's to her son Robert. This letter was also notarized by Kilpatrick at Robert's request. Kilpatrick testified that he could simply have witnessed the letter, which would have satisfied Moulthrop of its authenticity. The deed and the letter represent the sum total of legal work Kil-

patrick did for Mrs. Brenizer. All this work was paid for by Robert.

The final incident relating to Mrs. Brenizer's finances occurred in January, 1987. Sometime that month, Robert contacted Shelby at the bank, telling Shelby that Mrs. Brenizer wished the 400 shares to be transferred to Robert. Mrs. Brenizer later signed the stock transfer on an unknown date. This transfer is also a subject of this appeal.

In February of 1987, Mrs. Brenizer fell and broke her hip. She did not recover sufficiently from her injuries to care for herself, and lived in a nursing home until her death in April, 1989. The transfers subsequently set aside on undue influence grounds by jury verdict were the early December, 1986, addition of Robert as joint tenant with right of survivorship to the bank account, and the January, 1987, stock transfer to Robert.

■ Turning to the applicable law, a motion for a directed verdict is appropriate only where, with the facts considered most favorable to the non-moving party, reasonable minds could find only in favor of the moving party. *See Sab Harmon Industries, Inc. v. All State Bldg. Systems, Inc.*, 733 S.W.2d 476, 485 (Mo.App.1987). When considering a motion for directed verdict, the trial court may also consider reasonable inferences to be drawn from facts presented, *see Herberholt v. dePaul Community Health Center*, 625 S.W.2d 617, 624 (Mo. banc 1981), *later app Herberholt v. dePaul Community Health Center*, 648 S.W.2d 160 (Mo.App.1983); (superseded by statute as stated in *Gloria v. University of Health Sciences*, 713 S.W.2d 32 (Mo.App. 1986)). However, a case should not be submitted to a jury unless "each and every fact essential to liability is predicated on legal and substantial evidence," *Owens v. Union Electric Co.*, 729 S.W.2d 248, 250 (Mo.App.1987).

■ Here, in the case of undue influence, "each and every fact essential to liability" is that required by Missouri law to raise a presumption of undue influence. The party alleging undue influence has the burden to raise the presumption, *Martin v. O'Connor*, 406 S.W.2d 41, 43 (Mo.1966), which may of course be "rebutted" by the adverse party, *Salisbury v. Gardner*, 515 S.W.2d 881, 888–89 (Mo.App.1974). Still, the presumption *does not* disappear upon rebuttal evidence, and once raised, the case goes to the jury, *Mangan v. Mangan*, 554 S.W.2d 418, 421 (Mo.App.1977). Essentially, through the use of a "presumption," Missouri places a prima facie case requirement upon the party alleging undue influence which once satisfied, allows the party to submit the case to the jury, *Hodges v. Hodges*, 692 S.W.2d 361, 367 (Mo.App. 1985). A prima facie case for undue influence requires essentially the same three elements in wills and in deeds. In a will contest, the party alleging undue influence must assert a fiduciary relationship, benefaction to the fiduciary, and facts and circumstances from which it can be inferred the fiduciary/beneficiary was active in causing or assisting in the will's execution, *see Switzer v. Switzer*, 373 S.W.2d 930, 940–41 (Mo.1964). In the case of a deed for land, the "presumption" is raised when there is a confidential relationship, a deed favoring the one acting in the fiduciary capacity, and some evidence "from which the Court can infer undue influence," *Davis v. Pitti*, 472 S.W.2d 382, 387–89 (Mo. 1971). Undue influence itself is usually defined as "such overpersuasion, coercion, force, or deception as breaks the will power of the testator or grantor and puts in its stead the will of another." *Hamilton v. Steininger*, 350 Mo. 698, 168 S.W.2d 59, 67 (Mo.1943). Also, in determining whether there is evidence of undue influence, the court does not have to find the testator or grantor to be of unsound mind, *Jones v. Walker*, 774 S.W.2d 532, 535 (Mo.App. 1989); therefore, one may be unduly influenced while still mentally competent.

■ In the case at bar, the property contested is a certificate of deposit and 400 shares of stock, both of which are personal property. The court holds that the existing rule for establishing undue influence in wills or deeds applies to transfers of personal property as well. That being so, it is clear that if the personal representative

Duvall as plaintiff satisfied the three-prong prima facie case, the issue must be submitted to the jury, *see Mangan v. Mangan,* 554 S.W.2d 418, 421 (Mo.App.1977), and the appellants were not entitled to a directed verdict. Again, to test whether the prima facie case—*i.e.,* the presumption of undue influence—has been satisfied, a court must look at the evidence favoring the non-moving party, even though the party alleging undue influence has the burden of proof. *See Martin v. O'Connor,* 406 S.W.2d 41, 43 (Mo.1966).

■ The court holds that the trial court did not err in denying Robert's motion for a directed verdict. Respondent Duvall produced sufficient evidence, viewed favorably to her, to submit her case to the jury. Robert has not denied the first two prongs for undue influence, *i.e.,* a confidential or fiduciary relationship and a benefit from the transfers. Therefore, the question remaining is whether sufficient facts or circumstances exist to infer such overpersuasion, coercion, force, or deception was at work to substitute the will power of Robert for that of Mrs. Brenizer herself. The evidence from which undue influence may be inferred was:

\* In 1984, Robert had his name put on his mother's bank account, then withdrew part of the money and invested in his friend's bank stock, putting his and his wife's name on the stock.

\* After being thwarted in 1985, Robert's name again appeared on his mother's account in 1986, and when discovered and adamantly complained of by her, the son and two bank officials arrived at the mother's to discuss the account, after which meeting her mind was "drastically changed;" the bank notified Robert of the visit and chose to make a memorandum of the meeting.

\* Robert retained and paid an attorney who prepared a deed of the tillable acreage to his children, and had the same attorney prepare and notarize a letter to the mother's attorney to reacquire the farm abstract and stock certificates which had been reissued to the mother.

\* Robert contacted the bank to inform them that his mother wished to transfer the stock to him.

These facts and circumstances favorable to Duvall presented issues of undue influence to be resolved by the jury as trier of fact, and the appellants Robert and Phyllis Brenizer have no right to a directed verdict. Duvall presented "each and every fact essential to liability," *Owens v. Union Electric Co.,* 729 S.W.2d 248, 250 (Mo.App. 1987). The legal and substantial evidence of two unexplained joint tenancies in bank accounts, personally securing and paying a lawyer who helped in beneficial transactions, and popping up at conferences where the gifts were ultimately made through the help of bank personnel, all make a submissable case. This is especially true given the "liberal attitude regarding the quantum of evidence necessary to establish" undue influence once fiduciary relation and benefaction are established, *Pasternak v. Mashak,* 392 S.W.2d 631, 637 (Mo.App.1965). Robert Brenizer had the opportunity to present evidence rebutting the presumption of undue influence, yet once the presumption is raised, it must go to the jury. The subsequent adverse decision of the jury in the case is then final. Appellants' sole point on appeal is denied.