Neta WAGGONER, By Her Next Friend,
Rose WAGGONER, and Rose Waggoner
Individually, Plaintiffs–Appellants,

v.

MERCEDES BENZ OF NORTH
AMERICA, INC., Defendant–
Respondent.

No. 63259.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 31, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 30, 1994.

Application to Transfer Denied
Aug. 15, 1994.

John S. Sandberg, John P. Jacoby, Gregory L. Barnes, Sandberg, Phoenix & von Gontard, P.C., St. Louis, for plaintiffs-appellants.

Peter B. Hoffman, Matthew J. Eddy, Kortenhof & Ely, St. Louis, for defendant-respondent.

PUDLOWSKI, Judge.

Plaintiffs, Rose Waggoner in person and as next friend of her minor daughter, Neta Waggoner, appeal from the trial court's sustaining of defendant's, Mercedes Benz of North America, Inc., motion for directed verdict in this product liability action. In their appeal, plaintiffs argue the trial court erred in: (1) directing a verdict for defendant because there was evidence an auxiliary air valve was defectively designed and in place at the time of the accident; (2) excluding certain testimony; and (3) directing a verdict for defendant because plaintiffs presented sufficient evidence to establish proximate cause. We affirm.

In April 1986, Rose Waggoner (mother) purchased a 1978 Mercedes 450 SL. The vehicle had approximately 158,000 miles on it at the time of purchase. On April 8, 1988, mother agreed to take Neta Waggoner (daughter) to school. Mother backed the Mercedes out of her garage and waited for daughter in the driveway. Daughter emerged from the house and told her mother she would close the garage door. Daughter could not reach the garage door handle and mother told daughter she would close the door. According to mother, she shifted the car's transmission into drive and when she did, the car "just shot like a bullet." The car struck daughter in the back and she was thrust into a workbench located in the back of the garage. Daughter suffered injuries which required her to be hospitalized for two weeks.

Approximately one week after the accident, defendant sent Gary Bowne to inspect the car. The parties stipulated that there was no change in the car's condition between the time of the accident and the time of Bowne's inspection. Bowne concluded that the idle speed air valve, also referred to as an auxiliary air valve, was stuck in the open position. When this valve is in the open position the idle of the engine is increased. The valve acts as a fast idle mechanism and allows, when the engine is cold, additional air to flow into the manifold which increases the engine's rpm. As the engine warms up, the valve is supposed to close thereby shutting off the additional air flow and reducing the engine idle to its normal speed.

Plaintiffs filed their petition against Mercedes Benz of North America, Inc., and Erwin Schwartz, Inc. Plaintiffs' petition advanced two primary theories of liability, negligence and strict liability. Plaintiffs alleged, among other things, that the vehicle was defectively designed when put to a reasonably anticipated use in that the vehicle was susceptible to high engine idle in combination

with decreased braking response.[1] Before trial, plaintiffs dismissed without prejudice Erwin Schwartz, Inc. and during trial abandoned their claim of negligence.

At trial, mother testified that she did not know who previously owned the car or what mechanical condition these owners kept the car. Plaintiffs also presented testimony from Francis Oldham, a mechanic and accident investigator, and John Kile, a mechanic and owner of Chesterfield Motors. Oldham testified that the valve was defective because it failed in an open position. Oldham asserted that the valve failing in an open position is a defective and unreasonably dangerous condition because the failure results in a substantially higher than normal idle speed when the engine is hot. He also testified that the valve could fail in several ways, one of which being, if "foreign bodies" got into the valve. Kile testified by deposition and stated that he first saw the car sometime after the accident and that the car's body had been repaired. He also testified that he believed he ran some cleaner through the valve because, if it was sticking, this might clean it out.

At the close of plaintiffs' case, defendant made its motion for directed verdict. In sustaining the motion, the trial court stated it was directing a verdict because the plaintiffs failed to comply with "*Jasinski v. Ford Motor* ... 824 S.W.2d 454 [Mo.App.E.D.1992], in that they have not produced any evidence that either she or any third persons have made alterations to the product which would create a defect or could be the proximate cause of the damages incurred." The court also asserted that plaintiffs' expert, Francis Oldham, did not make a submissible case because he testified: (1) the car would not accelerate to the speed that it did without help from the gas pedal; (2) there was not a better design at "that time" (presumably the court was referring to the time of manufacture); and (3) the car was designed so that if the brakes had been completely depressed on the vehicle, this would overcome any acceler-

ation that the engine could give. This appeal followed.

■ A trial court may only sustain a defendant's motion for directed verdict when the facts in evidence and the reasonable inferences which may be drawn therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ. *Owens v. Union Elec. Co.*, 729 S.W.2d 248, 250 (Mo.App.S.D.1987). A case, however, should not be submitted to a jury unless each and every fact essential for liability is predicated on legal and substantial evidence, and the question whether the evidence in a particular case is substantial is one of law for the court. *Id.*

■ To recover under their theory of a defectively designed product, plaintiffs must establish the following: (1) defendant sold the product in the course of its business; (2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) plaintiff was damaged as a direct result of such defective condition as existed when the product was sold. *Jasinski*, 824 S.W.2d at 455. "As to this fourth element the plaintiff must produce evidence that neither he[she] nor any third person has made alterations to the product, which would create a defect that could be the proximate cause of the damages incurred." *Id.* (citing *Winters v. Sears, Roebuck & Co.*, 554 S.W.2d 565, 573 (Mo.App.St.L.D.1977)).

In *Jasinski*, appellants brought a product liability action against Ford Motor alleging that a C–6 transmission in a Ford automobile was defectively designed and the defect caused an accident in 1986. The car at issue was purchased in 1971, driven approximately 78,000 miles and sold in 1983. Appellant had no evidence regarding the car's service or repair history from 1971 to 1983. For purposes of its summary judgment motion, Ford admitted the car originally contained a C–6 transmission and that this transmission was

---

1. Plaintiffs also alleged in their petition that mother suffered *severe emotional distress* because the defective condition of the vehicle led to the accident which caused her to see daughter suffer injuries. The trial court directed a verdict for mother's claim of emotional distress because there was *no medical evidence to support* the claim. Plaintiffs did not challenge this ruling on appeal.

defective. Ford argued, however, that appellants had presented no evidence to show that the C–6 transmission was in substantially the same condition as when it was originally installed or that the C–6 transmission was, in fact, still on the car at the time of the accident. The trial court granted Ford's summary judgment. This court affirmed and stated that "the summary judgment facts would not support a finding that alterations were not made to the C–6 transmission originally installed in the Ford or that it was still in the car at the time of the accident." *Id.* at 455.

■ In the present case, the trial court found that plaintiffs failed to produce any evidence that there were not any alterations to the auxiliary air valve (valve) which would create a defect that could be the proximate cause of the damages incurred. It appears from the record the court also found plaintiffs failed to produce any evidence that the car had the original valve at the time of the accident. Mother testified that she did not know the identity of any of the car's previous owners or the mechanical condition these owners kept the car in. Mother, therefore, is unaware of the car's service and repair history for eight years, 1978 to 1986, during which time the car was driven approximately 158,-000 miles. In addition, plaintiffs produced no other evidence regarding the car's service and repair history from 1978 to 1986.

In their first point, plaintiffs argue that the trial court erred in directing a verdict and specifically address the issue of their failure to produce any service and repair history for the car during the eight year period. Plaintiffs argue their theory was that the car was defectively designed because it used a valve which, when it failed, had a propensity to fail in an open position. According to plaintiffs, this results in an increase in engine idle thereby causing the car to unexpectedly jolt forward and difficulties in braking. Plaintiffs contend their case was submissible for two reasons. First, there was circumstantial evidence that the original, "defective" valve was on the car at the time of the accident. Sec-

ond, assuming arguendo the valve had been replaced, only an identically operating, "defective" valve could be used as a replacement for the car. Even assuming plaintiffs' two contentions are true, the issue still remains whether plaintiffs presented any evidence that the valve, original or replacement, had not been altered in such a way that would create a defect that could be the proximate cause of the damages incurred.

Plaintiffs emphasize their claim that when the valve fails it cannot be repaired but rather must be replaced. This fact, even if true, does not eliminate plaintiffs' burden to present evidence that the valve had not been altered. Oldham testified that the valve could fail in the open position if "foreign bodies" got into the valve. In his deposition testimony, Kile asserted that he believed he ran some cleaner through the valve. It is possible, therefore, that prior to Mother's purchase of the car a mechanic or one of the owners introduced a "foreign body" which caused the valve to fail in the open position. This possible alteration to the valve would create a defect, namely the valve failing in the open position, that could be the proximate cause of the damages incurred. Plaintiffs, not the defendant, bear the burden of presenting evidence on this issue.

Bowne's deposition testimony also does not provide evidence regarding whether the valve had been altered. Bowne only testified that the valve was stuck in the open position. He did not state why the valve was stuck or if the valve had been altered or damaged in some way.

Plaintiffs had to produce evidence that the valve had not been altered in such a way that would create a defect that could be the proximate cause of the damages incurred. *Jasinski*, 824 S.W.2d at 455 [2]; *Williams v. Deere and Co.*, 598 S.W.2d 609, 612–13 (Mo.App. S.D.1980); *Weatherford v. H.K. Porter, Inc.*, 560 S.W.2d 31, 35 (Mo.App.St.L.D.1977). There is no evidence in the record regarding the car's service and repair history from 1978 to 1986, during which time the car was driven approximately 158,000 miles. Under these

---

2. Plaintiffs attempt to distinguish *Jasinski* from the present case. Regardless of any factual distinction, plaintiffs still had to produce evidence that the valve had not been altered in such a way that would create a defect that could be the proximate cause of the damages incurred.

circumstances, plaintiffs failed to present a submissible case.

In their second point, plaintiffs argue the trial court erred in excluding certain portions of Oldham's and Kile's testimony. Neither Oldham nor Kile rendered an opinion regarding whether the valve in the car at the time of the accident had been altered. Accordingly, plaintiffs' second point need not be addressed. Plaintiffs' third point also does not need to be addressed because of our holding that plaintiffs failed to make a submissible case.

Judgment affirmed.

SIMON, P.J., and KAROHL, J., concur.