Mark PESTEL, Appellant,

v.

VERMEER MANUFACTURING COMPANY, Appellee.

No. 94–4057EM.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1995.

Decided Aug. 24, 1995.

Terry A. Bond, argued, Clayton, MO, for appellant.

Peter von Gontard, argued, St. Louis, MO (Teresa D. Bartosiak, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

Mark Pestel brought this action against Vermeer Manufacturing Company after he was injured when he slipped in front of a Vermeer 186 stump cutter. The District Court [1] granted Vermeer's motion for directed verdict at the close of Mr. Pestel's case. On appeal, Mr. Pestel claims the District Court erred in refusing to allow testimony from an expert witness.

We affirm.

## I.

In 1989, Mr. Pestel crossed in front of a Vermeer Model 186 stump cutter to check whether the operator of the machine was cutting into the stump at a point too low or too deep. When Mr. Pestel was about 28 to 30 inches from the stump cutter, he slipped on the grass, and his right foot went into the cutter wheel.

During preparation for trial the plaintiff hired Keith Vidal to see whether a safety-bar guard could be made for the stump cutter which would have protected Mr. Pestel's foot from the cutter wheel.[2] Mr. Vidal came up with a design concept for a guard after starting with a design Vermeer was using for its 206 Model stump cutter.[3] The 206 Model

has had a single-bar safety guard on it since 1988. Mr. Vidal designed his guard by taking two 206 safety guards and welding them together so that each guard was parallel to the other and ten inches apart—somewhat like a football-helmet guard. He then placed a wire mesh between the top bar and the bottom bar. While Mr. Vidal was working on his design, he did not look at any other manufacturers's stump cutters, and he did not make a patent search to determine whether there were patents on guards for stump cutters. Mr. Vidal had never used a stump cutter, and he did not consult with any stump-cutter operators to determine how his design would work in the field. Mr. Vidal did not test his fabricated guard, but the Vermeer Company did.

Vermeer duplicated the guard developed by Keith Vidal and ran a comparison between that guard and the guard already on the 206 stump cutter. It then prepared a video comparing the Vidal guard against the 206 guard in six stump-cutting situations: (1) a regular small stump; (2) a V-shaped stump; (3) a stump that has two branches, one significantly higher than the other; (4) a single large irregular stump; (5) a stump in a hole; and (6) a "minefield" of approximately 10 small stumps ranging in size from 1 inch to 5 inches in diameter.

Before watching the video Mr. Vidal had never seen a 206 with a guard cutting a stump. After seeing Vermeer's video tape, he admitted his guard needed further refinements. The corners of the bottom part of the guard needed to be rounded so that they would ride more easily over rough surfaces, and the mesh on the bottom edge of the guard needed to be worked on so that it would not interfere with the guard while it was floating over the ground. He also con-

1. The Hon. Jean C. Hamilton, Chief Judge, United States District Court for the Eastern District of Missouri.

2. Mr. Vidal earned a bachelor's degree in Mechanical Engineering in 1985. He also has a Master of Science in Mechanical Engineering from the University of Nebraska, which he received in 1986. The emphasis of his undergraduate work and master's degree was Metallurgy and Materials Science. He is on an American

National Standards Institute committee which concentrates on safe walking and working surfaces.

3. The 206 Model is nearly identical to the 186 Model. It has a 20–horsepower engine and a single metal safety guard. The 186 has an 18–horsepower engine and does not have a safety guard.

sidered making the guard out of smaller tubing so that it would be lighter.

## II.

■■■ The admissibility of expert testimony is governed by Federal Rule of Evidence 702,[4] and it is the trial judge's duty to screen such evidence for relevance and reliability. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* — U.S. ——, —— – ——, 113 S.Ct. 2786, 2795–96, 125 L.Ed.2d 469 (1993). Such evidence is admissible if it is scientifically based and will assist the trier of fact in determining a fact in issue. *Daubert* suggests that a trial court, when assessing the reliability of expert testimony, consider (1) whether the concept has been tested, (2) whether the concept has been subject to peer review, (3) what the known rate of error is, and (4) whether the concept is generally accepted by the community. *Id.* at —— – ——, 113 S.Ct. at 2796–97.

■■■ The District Court barred plaintiff's use of Mr. Vidal's fabricated guard and also barred the plaintiff from using Vermeer's video. The Court found the guard was not relevant because the expert admitted that he would not use the guard in its present state on a stump cutter. Mr. Vidal was hired to show that a guard could be made which would have prevented the injury from occurring. He was not prepared, however, to show that such a guard was ready for the market—his design was not finished. Therefore, his fabricated guard was not relevant to show that a guard could be made that would offer protection, and yet not inhibit the use or practicality of the machine.

■■■ The Court then applied a *Daubert* analysis to Mr. Vidal's proffered testimony before excluding it. First, the Court noted that Mr. Vidal had not tested his guard. The Court then refused to allow Mr. Vidal to use any of the testing done by Vermeer because

he had not developed, participated in, or supervised the testing of his design. The Court stated that this kind of testing by the manufacturer is not legally sufficient and can not be said to be the fair scientific testing *Daubert* addresses.[5]

The Court also found that the design was not reliable or relevant because the concept of the guard was still evolving. Even though the expert stated the changes were minor, those changes might have led to further refinements and additional modifications.

With respect to peer review and publication, the Court noted that the expert had not contacted others in the industry to see if they had attempted to create a similar type of guard. He had not subjected his concept to any manufacturers, academicians, or engineering professors, for scrutiny.

The Court did not consider the potential rate of error because it was not relevant to this inquiry.

Finally, the Court considered whether there was any general acceptance of guards on stump cutters. The Court noted that Mr. Vidal had not performed a patent search to determine whether other guards existed or whether guards for stump cutters were feasible. He had not talked to any operators who worked with this type of machinery. Looking to the record before it, the Court concluded there was no general acceptance of guards for stump cutters.

By applying *Daubert* to the expert and the facts, the Court made a preliminary assessment of the reasoning and methodology underlying the expert's proffered testimony. — U.S. at ——, 113 S.Ct. at 2796. The Court concluded that the testimony was not scientifically valid and would not aid the jury in its fact finding. We do not find that the

---

4. Rule 702 provides:
   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

5. We trust that the District Court does not mean to suggest that all testing performed by someone other than the expert will be legally insufficient for an expert to rely on. In this case, however, we do not believe that the Court's statement was reversible error. We uphold the Court's ruling on other grounds.

District Court abused its discretion in any of its analysis. Therefore, we affirm.