_____

No. 95-2202

_____

Jeffrey L. Peitzmeier; Sherry L.    *
Peitzmeier,                          *
                                     *
          Appellants,                *
                                     *  Appeal from the United
     v.                              *  States District Court for
                                     *  the District of Nebraska.
Hennessy Industries, Inc., a New     *
Jersey Corporation, d/b/a through    *
its divisions Coats Company and      *
Solar Industries, Inc.,              *
                                     *
          Appellee.                  *


                    _____

          Submitted:  December 12, 1995

             Filed:  October 4, 1996
                    _____

Before BOWMAN and LOKEN, Circuit Judges, and SCHWARZER,[*] District Judge.

                    _____

BOWMAN, Circuit Judge.


     Jeffrey Peitzmeier and his wife, Sherry, appeal the adverse grant of
summary judgment by the District Court[1] in their product liability suit
against Hennessy Industries, the manufacturer of the tire-changing machine
at issue in this case.  We affirm.

_____

     *The  HONORABLE  WILLIAM  W.  SCHWARZER,  United  States
     District Judge for the Northern District of California,
     sitting by designation.

     [1]The Honorable William G. Cambridge, Chief Judge, United
States District Court for the District of Nebraska.

The background facts are not in dispute. This action arose out of an accident that took place when Jeffrey Peitzmeier, a mechanic at Top Tech Automotive Garage in Yutan, Nebraska, was changing a tire using a Hennessy tire-changing machine.

The advantage of the Hennessy design is that the operator changes the tire on a platform above the ground instead of kneeling down or bending over and doing the work on the ground. The machine makes it easier to deflate and demount the old tire and to mount and inflate the new tire. Removing air from the old tire is accomplished by a "bead loosener," a mechanism that pushes the tire away from the rim of the wheel. On the Hennessy RC20-AA tire changer, the model at issue here, the bead loosener is on the side of the machine. After the bead loosening process is complete, the operator places the tire and wheel onto the platform of the machine, where clamps are placed on the rim of the wheel to hold it in place for the demounting, mounting, and inflation phases of the tire-changing procedure.

In inflating the tire, the operator uses an inflation hose, which he controls by depressing a foot pedal. An air pressure gauge displays the pressure in the tire in "psi" (pounds per square inch) as the operator inflates the tire. Proper inflation requires seating the "beads" (small wires in the wall of the tire) against the outer flanges of the wheel. When the beads seat they emit a "pop" sound, indicating that the tire then may be inflated to its service pressure.

Top Tech bought the tire changer from Hennessy in 1988. It came with a customer information packet consisting of operating instructions, warranty information, and warnings. The printed instructions and bold face labels included warnings: (1) that until the beads are seated a tire should not be inflated in excess of

forty psi, (2) that over-inflation can cause an explosion of the tire that may propel the tire, rim, or equipment upward with sufficient energy to cause injury or death, (3) that the operator should keep his hands and body away from the inflating tire, (4) that the tire and rim should be inspected for wear or defects before mounting, and (5) that the tire changer is not intended to be a safety device for restraining exploding tires, tubes, rims, or bead-seating equipment. Peitzmeier was an experienced garage mechanic who, from 1988 to June 4, 1992, the date of the accident, had used the tire changer without incident approximately 150 to 200 times. On the occasion that gave rise to this lawsuit, Peitzmeier attempted to mount a sixteen-inch tire on a sixteen-and-one-half-inch wheel.

Because Peitzmeier had mismatched the smaller tire and the larger wheel, the tire would not properly fit, or "bead up," on the rim. After some difficulty, Peitzmeier asked the owner of the garage, Lyle Foster, to help him. Foster suggested that Peitzmeier beat on the tire with a rubber mallet. Peitzmeier tried beating on the tire with a mallet, but the tire still did not fit properly. Foster next suggested that Peitzmeier add more air to the tire. Despite Hennessy's warning labels stating that the operator should not inflate the tire to more than forty psi while seating beads and that over-inflation can cause the tire to explode, Peitzmeier added more air to the tire, increasing the tire pressure to sixty psi.

When Foster learned that Peitzmeier was still having problems changing the tire, he examined the tire himself and discovered the mismatch of smaller tire to larger wheel. When Foster explained to Peitzmeier that he had mismatched the tire and wheel, Peitzmeier responded, "Oh, no wonder," and began to release air from the tire. As Peitzmeier did so, the tire exploded and he was injured as the force of the explosion propelled the tire and rim into his face and head.

The Peitzmeiers filed suit against Hennessy, alleging causes of action in strict liability and negligence.[2]  After discovery had been completed, Hennessy filed a motion for summary judgment, arguing, among other things, that the testimony of the Peitzmeiers' expert, Alan Milner, was inadmissible under Federal Rule of Evidence 702 as interpreted by the United States Supreme Court in Daubert v. Merrell Dow Pharmecuticals, Inc., 113 S. Ct. 2786 (1993).

The District Court granted Hennessy's motion for summary judgment, holding that Milner's testimony was inadmissible under Federal Rule of Evidence 702 and Daubert, and that based on the admissible, undisputed evidence Hennessy was entitled to judgment as a matter of law.  The Peitzmeiers appeal.

**II.**

The Peitzmeiers argue that the District Court abused its discretion in excluding Milner's testimony.  Decisions concerning the admission of expert testimony lie within the broad discretion of the trial court, and these decisions will not be disturbed on appeal absent an abuse of that discretion.  Westcott v. Crinklaw, 68 F.3d 1073, 1075 (8th Cir. 1995).

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue, a witness qualified as an

---

[2]The Peitzmeiers evidently have abandoned their negligence claims on appeal, as their arguments focus only on strict liability for design defect and strict liability for failure to warn.  In any case, our analysis would apply with even stronger force to any asserted negligence claims, since such claims have a higher threshold of proof than strict liability claims.

-4-

expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The Supreme Court in Daubert makes it plain that the trial court is to act as a gatekeeper in screening such testimony for relevance and reliability, that is, make an assessment whether the reasoning and methodology underlying the testimony is scientifically valid. See Daubert, 113 S. Ct. at 2796. In doing so, the court should consider, among other factors (1) whether the theory or technique "can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error"; and (4) whether the theory has been generally accepted. Id. at 2796, 2797.

In this case, the Peitzmeiers sought to establish through Milner's testimony that the tire changer was defectively designed. Milner would have testified that in his opinion simple design changes on the machine would eliminate the potential for injuries and that the tire changer is defective in design in that (1) the machine acted as a "launch pad" for the exploding tire and wheel assembly, (2) the clamps did not restrain the exploding tire and wheel assembly, (3) the machine could not limit the amount of air pressure the operator could put into the tire, (4) the machine had no interlock system that would prevent the operator from inflating the tire unless the restraint system was in place, and (5) the machine had no mirror or other device by which the operator could inspect the lower bead during inflation.

As a threshold matter, the Peitzmeiers argue that Daubert is inapplicable to Milner's testimony, contending that his opinions are founded on basic engineering principles, whereas Daubert applies only to novel scientific testimony. This argument fails, for our Court has not given Daubert so narrow a reading. See, e.g., Gier v. Educational Serv. Unit No. 16, 66 F.3d 940, 943-44

-5-

(8th Cir. 1995) (applying <u>Daubert</u> to psychological evaluations in cases of alleged child abuse); <u>Pestel v. Vemeer Mfg. Co.</u>, 64 F.3d 382, 384 (8th Cir. 1995) (applying <u>Daubert</u> to testimony of mechanical engineer). We conclude that the <u>Daubert</u> analysis is properly applied to Milner's proffered testimony.

We first consider whether Milner's theories or techniques have been tested. In that regard, Milner concedes that he has neither designed nor tested for safety or utility any of the proposed safety devices that he claims are missing from the Hennessy tire-changing machine. His only demonstration of an alternative design is a series of rough sketches that have not been adapted into engineering drawings, much less prototypes. Milner has shown no factual basis to support an opinion that his design changes are feasible or that they would not hinder the efficacy of Hennessy's present tire-changing model.

At the heart of Milner's opinion that the tire changer was defective is his theory that the rotating platform on the tire changer acted as a launch pad, which served to propel the tire upward when the explosion occurred. Milner admits, however, that he has never designed, built, or tested a platform that has been shown to reduce the launch effect of an exploding tire and wheel assembly while adequately supporting the tire and wheel assembly during the tire-changing process. Clearly, Milner's proffered testimony does not satisfy the first <u>Daubert</u> factor.

Next we consider whether the theory or technique has been subjected to peer review. While not required for admissibility, "submission to the scrutiny of the scientific community is a component of `good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected." <u>Daubert</u>, 113 S. Ct. at 2797. In this regard, not one of Milner's proposed changes to the tire-changing machine has been subjected to peer review. The Peitzmeiers argue that Milner's theories have in

-6-

fact been subjected to peer review because he has testified about them in court in other products liability cases. We reject the suggestion that cross-examination at trial and the number of Milner's court appearances in design-defect cases can take the place of scientific peer review. Because Milner's concepts are unfinished and untested, and have not been subjected to peer review, any testimony from Milner about how his proposed design changes would have reduced Peitzmeier's injuries is wholly speculative.

The final Daubert factors are the known or potential rate of error and the general acceptance in the scientific community of the proffered theories. Because Milner has not conducted any experiments or testing of any kind, there cannot be a known rate of error for his results. Likewise, no evidence is offered concerning a "potential" rate of error. Moreover, the Peitzmeiers offer no testimony regarding the general acceptance of either Milner's theory or his methodology.

Having carefully reviewed Milner's proffered testimony on design defect in light of the factors enumerated in Daubert, we conclude that the District Court did not abuse its discretion in excluding this testimony because of its failure to satisfy the standards of Rule 702.[3]

The Peitzmeiers also argue that the District Court erred in excluding Milner's testimony regarding consumer expectation. We need not and do not address this issue. Testimony on consumer expectation is relevant only to show that a defect in a product

---

[3]The Peitzmeiers' citation to the opinion of another federal district court that denied a similar motion to exclude Milner's testimony in a tire changer case is unavailing. See Meneely v. Denman Tire Corp., No. 93-10151 (N.D. Fla. July 20, 1995). The conclusions reached by a district court in a different case have no bearing on the question of whether the District Court abused its discretion in this case.

makes the product unreasonably dangerous and unsafe for its intended use. Here we do not reach that step of the analysis, because we hold that the Peitzmeiers have failed to survive summary judgment on the antecedent question of whether there was a defect in the Hennessy tire changer. See infra part III.A.

## III.

The Peitzmeiers argue that the District Court erred in granting summary judgment for Hennessy on their strict liability defective-design and failure-to-warn claims. We review de novo. Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir. 1996), petition for cert. filed, 65 U.S.L.W. 3086 (U.S. July 23, 1996) (No. 96-129). We will affirm the judgment if the record shows that there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. Id.; see also Fed. R. Civ. P. 56 (c).

With Milner's testimony properly excluded, we conclude there are no genuine factual disputes on these claims and that Hennessy is entitled to judgment as a matter of law.

## A.

To defeat Hennessy's motion for summary judgment on the Peitzmeiers' claim of strict liability for defective design under Nebraska law (which the parties agree applies here), the Peitzmeiers needed to show genuine issues of material fact on the five elements of the cause of action:  that Hennessy placed the tire changer on the market knowing that it would not be inspected for defects before use; that the tire changer was defective when sold; that the alleged defect was a proximate cause of the injuries Peitzmeier sustained while using the tire changer "in the way and for the general purpose for which it was designed and intended"; that the alleged defect made the tire changer "unreasonably

dangerous and unsafe for its intended use"; and that Peitzmeier's "damages were a direct and proximate result of the alleged defect." <u>Kudlacek v. Fiat S.p.A.</u>, 509 N.W.2d 603, 610 (Neb. 1994) (quoting syllabus of the court in <u>Rahmig v. Mosley Mach. Co.</u>, 412 N.W.2d 56, 58-59 (Neb. 1987)).

The Peitzmeiers have not presented any evidence, apart from Milner's inadmissible opinions, to support a finding of defective design. Instead, the evidence all points in one direction: toward a finding that the tire changer was not defective, and that it certainly was not the proximate cause of Peitzmeier's injuries. The tire changer was sold in its intended condition, free of any manufacturing defects, and had been used by Peitzmeier before the accident some 150 to 200 times without incident. The Peitzmeiers offer no evidence that the machine was designed or marketed to prevent a tire from exploding or to restrain a tire if it did explode, so it follows that the machine's failure to so do in this case was not a defect. Further, there is no evidence that the tire changer itself exploded or that it caused the tire and wheel assembly to explode. Instead, the uncontroverted evidence shows that Peitzmeier's over-inflation of the tire and mismatching of the tire and the wheel caused the explosion. As any adult--most especially an experienced mechanic--would surmise, an overinflated tire (especially one smaller than the wheel on which it is mounted) is prone to explode. Here it was the operator, not the tire-changing machine, who mismatched the tire and wheel and then inflated the tire well beyond the recommended safe psi.

The District Court properly determined that Hennessy was entitled to summary judgment on the Peitzmeiers' defective design claim.[4]

---

[4]The Peitzmeiers argue that "crashworthiness" or "enhanced injury" should apply to their case. The crashworthiness theory is used to hold automobile manufacturers liable where, even though an alleged defect in the automobile was not the proximate cause of the initial collision, a manufacturer may nonetheless be liable for injuries sustained in the second collision within the vehicle. <u>Kudlacek v. Fiat S.p.A.</u>, 509 N.W.2d 603, 610 (Neb. 1994). "Under a theory of crashworthiness, the manufacturer is liable for only that portion of the damages caused as a result of the defective design. Therefore, the plaintiff must show that his injuries were enhanced as a result of the defective design of the vehicle." <u>Id.</u>

The Peitzmeiers also argue that Hennessy knew of the "bead hang-up"[5] phenomenon, and its relationship to the "launch pad" effect, and did not adequately warn of these dangers on the tire changer.  The Peitzmeiers do not allege that Peitzmeier himself did not know of the dangers of "bead hang-up," but only that Hennessy provided no warnings of the danger.

Under section 402A of the Restatement (Second) of Torts, although a product may be free from manufacturing or design defects, it nonetheless may be defective if the manufacturer fails to warn or inadequately warns users about dangers inherent in the use of the product that the manufacturer knows exist and about which the user is likely to be unaware. Restatement (Second) of Torts § 402A cmt. j (1965).  The duty to warn does not arise, however, "if the user knows or should know of the potential danger, especially when the user is a professional who should be aware of

---

In cases involving "indivisible" injury, a plaintiff must establish that the alleged defect was a substantial factor in causing the alleged enhanced injuries. Id. at 611.  Because the Peitzmeiers have failed to survive summary judgment on their claim that the tire changer is a defective product, we need not and do not reach the issue of enhanced injury.

[5]The "bead hang-up" phenomenon occurs on those occasions when the operator of a tire changer is unable to mount a tire because a wheel-tire mismatch, rust, imperfections in the wheel, improper lubrication, or other condition causes one or more of the tire beads to "hang up" and not slide across the wheel surface and seat against the rim.  If the operator tries to force a "hung-up" bead to seat by over-inflation of the tire, the bead wires in the tire can break, causing a sudden release of pressurized air--an explosion.

the characteristics of the product." <u>Strong v. E.I. DuPont de Nemours Co.</u>, 667 F.2d 682, 687 (8th Cir. 1981) (applying Nebraska law in negligent failure to warn case).

As previously mentioned, the Hennessy tire changer was equipped with explicit warnings. "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Restatement (Second) of Torts § 402A cmt. j. The warnings provided by Hennessy describe the hazards of over-inflation, warn the operator not to exceed forty psi of air pressure to seat beads, and warn the user never to exceed the tire manufacturer's recommended air pressure. The warnings on the tire changer not only alert the operator to the danger of serious injury or death if all warnings are not followed, but they also specifically warn the operator to keep his hands and entire body away from the inflating tire. Furthermore, the warning label gives notice that the tire changer is not intended to be a safety device for restraining exploding tires. These warnings fully satisfy any duty to warn that may have been present in this case.

Finally, even if we assume for the sake of argument that the warnings were somehow inadequate, the Peitzmeiers have made no showing that any such inadequacy was the proximate cause of Peitzmeier's injuries. "If, despite deficient warnings by the manufacturer, a user is fully aware of the danger which a warning would alert him or her of, then the lack of warning is not the proximate cause of the injury." <u>Strong</u>, 667 F.2d at 688 (negligent failure to warn).

In this case, Peitzmeier is an experienced mechanic who was familiar with the Hennessy tire changer and who had used it to change between 150 and 200 tires before the accident. Peitzmeier testified in his deposition that he had read all of the Hennessy

warning labels on the tire changer.  Despite the presence of such warnings, Peitzmeier testified that it was his practice to exceed the service pressure rating on the tire by as much as ten psi in order to seat the beads.  It is undisputed that the explosion occurred after Peitzmeier mismatched a sixteen-inch tire on a sixteen-and-one-half-inch wheel and then, disregarding Hennessy's clear warnings, greatly overinflated the tire.  In these circumstances, it is beyond cavil that an inadequate warning was not the proximate cause of Peitzmeier's injuries.  The District Court thus properly granted summary judgment in favor of Hennessy on the Peitzmeiers' failure-to-warn claim.

## IV.

The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-12-