**Rick DOBLAR, as Special Administrator for the estate of Jason Lee Doblar, Plaintiff,**

v.

**UNVERFERTH MANUFACTURING COMPANY, INC., Defendant.**

No. CIV. 96–4154.

United States District Court, D. South Dakota, Southern Division.

Sept. 18, 1997.

Thomas R. Pardy, Mumford, Protsch & Pardy, Madison, SD, Stanley L. White, John C. Philo, Philo, Atkinson, White, Stevens, Eright & Whitaker, Detroit, MI, for Plaintiff.

Michael J. Schaffer, Davenport, Evans, Hurwitz & Smith, Souix Falls, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, District Judge.

Defendant Unverferth Manufacturing Company, Inc., filed a motion in limine to exclude the trial testimony of plaintiff's expert, Vaughn Adams, on the ground that the expert's testimony fails to meet the standards of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Plaintiff resisted the motion and presented the testimony of Mr. Adams at a *Daubert* hearing held on Monday, September 8, 1997. For the reasons stated below, the Court denies defendant's motion in limine and further denies defendant's motion for summary judgment, which depends upon a successful result for defendant on the motion in limine.

Plaintiff Rick Doblar brought this diversity suit alleging claims for negligence and strict liability against defendant Unverferth Manufacturing Company following the death in April 1994 of his four-year old son, Jason Doblar, who was injured when he became caught in the door of a Kill Brothers Model 200 gravity grain box located on the plaintiff's farm. Although the Kill Brothers Company manufactured the gravity box in 1980, defendant Unverferth Manufacturing assumed any liability as successor in interest when Kill Brothers Company merged into Unverferth Manufacturing in 1993.

Plaintiff alleges that defendant designed, manufactured, and sold the gravity box with an inadequate door and lever system, failed to test adequately the safety of the design of the gravity box door and lever system, failed to provide adequate warnings and instructions on and with the gravity box, and failed to recall the gravity box, supply modification kits, or launch a warning campaign to alert owners, users, and others of the hazards of operation which it knew, or should have known existed between the date of sale to plaintiff in 1983 and the date of Jason Doblar's injury on April 22, 1994. Plaintiff further alleges that the gravity box was defective at the time it left the manufacturer and was dangerous and unsafe for the reasonably foreseeable uses of the product. The defendant denies the plaintiff's allegations. There are no witnesses who were present with Jason when his injury occurred. Jason's mother found him caught in the door of the gravity box, but at her deposition, she was unable to provide any detailed information about the cause and nature of the injury.

At trial plaintiff wishes to present to the jury the testimony of Vaughn Adams, Senior Consulting Engineer with BTI Consultants of Tempe, Arizona. Mr. Adams obtained a B.S. degree in engineering design from Arizona State University in 1964, an M.S. degree in human factors engineering from the same university in 1970, and a Ph.D. in safety engineering from Texas A & M University in 1975. He teaches design engineering at Arizona State University. Additionally, he has conducted research, taught courses, and offered consulting services in the principal areas of human factors engineering, systems and product design, man/machine system integration, product and mechanical design, and systems safety engineering. He has published and presented numerous articles and papers, and he maintains membership in professional engineering associations such as the American Society of Agricultural Engineers. He is a licensed engineer in Arizona and Texas and has been licensed in California in the past.

If permitted to testify at trial, Mr. Adams would give his opinion that the Kill Brothers Model 200 gravity grain box was defectively designed in that the side door of the gravity box presented an inadvertent, uncontrolled, and guillotine-like hazard because the "side unloading nonbinding door" can close during anticipated usage, creating a hazard that was recognized industry–wide, and was, therefore a controllable hazard by the manufacturer. He would further opine that Kill Brothers should have designed, manufactured, and sold the gravity box with a positive locking feature on the door to prevent the hazard identified. He suggests that the manufacturer should have provided a door control mechanism safety feature such as a thrust washer and nut system for a positive ride up and down, pip pins to engage the control mechanism when the door is opened, spring locking tine that engages and locks the control mechanism at each position at which the control wheel is stopped, detents designed to engage and lock the control wheel when the side door is opened, or latches, ratchets, sliding pins, and/or locking pawls designed to engage and lock the control wheel when the side door is opened. Mr. Adams would testify that the feasibility of side door locking safety features is evidenced by the utilization of such features in other manufacturers' models of gravity grain boxes. Mr. Adams would testify that, without such a safety feature, the gravity box on plaintiff's farm presented an unreasonably hazardous and dangerous condition to users and bystanders, which predictably would lead to injuries, particularly to children.

Mr. Adams would testify that the brake block provided on the Kill Brothers gravity box control wheel hub does not function in an automatic manner to prevent door closure, and the manufacturer failed to provide instructions on how to adjust a wing screw on the wheel to cause the door to stay in the up position. Mr. Adams would further testify that the manufacturer did not properly test and evaluate the safety of the gravity box before releasing it into commerce and such failure falls below all reasonable and prudent engineering standards of care. He would also testify that the manufacturer failed to provide adequate warnings of the hazard presented, failed to provide an owner's manual with instructions on how to use the gravity box, and failed to retrofit the gravity box to control the hazard.

Defendant urges the Court to exclude the expert's testimony for several reasons. Defendant emphasizes that Mr. Adams has not done any testing or studies to support his theories and opinions, he did not conduct tests on the gravity box at issue in this case, he computed "generalized calculations," but did not rely upon those in forming his opinions, and he did not conduct tests or measurements to determine that a child the size of Jason Doblar could have raised the door and held it open. Defendant also contends that Mr. Adams has not designed a gravity box or any type of grain-handling equipment, has not been involved in the manufacture of a gravity box, has not created any design that he actually incorporated into a gravity box to hold open the door, and has not used a gravity box himself. Further, defendant argues that Mr. Adams has not designed warnings for a gravity box and he has not conducted any study to determine if other manufacturers have used such warnings.

■ While plaintiff argues that *Daubert* should not apply in this case because the expert's testimony is of a technical, and not a scientific, nature under Rule 702, the Eighth Circuit rejected that precise argument and applied the *Daubert* analysis to the proffered testimony of an engineering expert in *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 297 (8th Cir.1996). Thus, the Court must evaluate the merits of defendant's motion in limine in light of the Daubert principles.

The Supreme Court instructed in *Daubert* that, when faced with a proffer of expert testimony, the trial judge "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert,* 509 U.S. at 592, 113 S.Ct. at 2796. "This entails a preliminary assessment, of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.,* 509 U.S. at 593, 113 S.Ct. at 2796. The Court must screen the proffered

evidence for relevance and reliability. *Pestel v. Vermeer Mfg. Co.*, 64 F.3d 382, 384 (8th Cir.1995). When assessing reliability, the Court must consider "(1) whether the concept has been tested, (2) whether the concept has been subjected to peer review, (3) what the known rate of error is, and (4) whether the concept is generally accepted by the community." *Id.* (citing *Daubert*).

In applying the *Daubert* factors and analyzing this case in light of Eighth Circuit precedents, the Court concludes that the *Pestel* case is closer to the case at bar than *Peitzmeier*. In contrast, however, to the *Pestel* discussion of the first factor—whether the concept has been tested—the testimony presented by plaintiff at the *Daubert* hearing establishes that a stop or guarding mechanism is commonly used on gravity grain boxes, while in *Pestel* guards generally were not used on stump cutters. *Cf. Pestel,* 64 F.3d at 384. In considering the adequacy of the method used, the Court finds that plaintiff's expert is not relying for his opinions upon any new science; rather, the evidence shows that door-stopping mechanisms on gravity grain boxes employ simple engineering principles that have been in use for many years and are not peculiar to gravity boxes. Because these simple principles have been in common use for an extended period of time, there is not a new concept to submit to manufacturers, academicians, or engineering professors for scrutiny. *Cf. Pestel,* 64 F.3d at 384.

Similarly as in *Pestel,* the Court does not consider the potential rate of error because it is not relevant to this inquiry. *Id.* Mr. Adams testified that fault tree analysis can predict engineering problems, but the method is used primarily as a design tool for engineers and is not a technique for peer review of the opinions held by an expert who wishes to testify about engineering principles at trial.

Finally, the Court has considered whether there is general acceptance of handwheel locking mechanisms among manufacturers of gravity grain boxes. *See Pestel,* 64 F.3d at 384. Both parties have introduced into evidence photographs of gravity boxes which utilize such mechanisms. The agricultural machinery industry has for a number of years employed simple engineering principles, used in many other disciplines and undertakings, to create safety mechanisms on the side doors of gravity boxes.

By applying *Daubert* to the expected testimony of Mr. Adams and the facts of this case, the Court makes a preliminary assessment of the reasoning and methodology underlying the proffered testimony. The Court concludes that Mr. Adams's testimony is scientifically valid and will aid the jury in its fact finding mission. Mr. Adams's opinions are the product of good academic training and extensive experience in commonly used design principles, even though he does not have specific experience with regard to gravity grain boxes. Mr. Adams need not actually have designed a gravity box to assist the jury in understanding the engineering principles at work. Further, Mr. Adams is qualified to give testimony that will assist the jury in determining whether the lack of any warnings concerning the use of the gravity box was the proximate cause of the injury sustained by Jason Doblar. Defendant's motion is limine to exclude the testimony of Vaughn Adams is denied.

In light of the Court's decision denying defendant's motion in limine to exclude Mr. Adams's testimony, and having carefully reviewed defendant's motion for summary judgment in the light most favorable to plaintiff, the Court finds that there exist genuine issues of material fact for trial. Accordingly,

IT IS ORDERED:

(1) that defendant's "Motion in Limine Regarding the Testimony of Vaughn P. Adams, Jr." is denied. (Doc. 25.)

(2) that defendant's "Motion For Summary Judgment" is denied. (Doc. 22.)