Judy PILLOW, Plaintiff,

v.

GENERAL MOTORS CORP., Defendant.

No. 4:97–CV–1416 (CEJ).

United States District Court,
E.D. Missouri,
Eastern Division.

Dec. 17, 1998.

Stan J. Goodkin, Goodkin Law Office, St. Louis, MO, for plaintiff.

Jordan B. Cherrick, Dan H. Ball, Kevin A. Sullivan, Thompson Coburn, St. Louis, MO, for defendant.

### MEMORANDUM

JACKSON, District Judge.

This matter is before the Court on defendant's motion in limine and defendant's motion for summary judgment. *See* Fed. R.Civ.P. 56. Plaintiff has filed a response in opposition to both motions.

This is a products liability action in which the plaintiff claims that the defendant defectively designed the brake system on her 1988 Chevrolet van. Plaintiff was injured when her van collided with the rear end of a pick-up truck. In her complaint, plaintiff specifically alleges the defect as follows:

8. **Defendant General Motors Corporation sold the 1988 Vandura Van in the course of its business; at the time of the sale, the van was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use because the crush space located in the front of the driver of the van contained components which transmitted forces directly to the master cylinder and brake pedal systems causing the brake pedal to be violently thrust rearward toward the driver's right foot whenever the van made contact or impact with the rear of another vehicle.**

Under Missouri law, to prevail in a products liability action under a theory of defective design, an injured plaintiff must establish that 1) defendant sold the product in the course of its business; 2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use; 3) the product was used in a manner reasonably anticipated; and 4) plaintiff was injured as a direct result of such defective condition as existed when the product was sold. *Jaurequi v. John Deere Co.*, 971 F.Supp. 416, 422 (E.D.Mo.1997); *Waggoner by Waggoner v. Mercedes Benz of North Am., Inc.*, 879 S.W.2d 692, 694 (Mo. App.E.D.1994).

In its motion in limine defendant moves to exclude the testimony and opinions of plaintiff's expert witness, H. Boulter Kelsey, Jr.[1] If allowed to testify, Kelsey would state that in his opinion: (1) the forces placed on the front end of the brake master cylinder of plaintiff's van as a result of the frontal impact between the van and the rear end of a heavy duty pick-up truck were transmitted through the brake system of the van to the brake pedal and the break pedal, independently from the crush to the front end of the

---

1. Defendant does not assert that Kelsey is unqualified to present expert testimony, but rather that his proffered testimony is neither relevant nor reliable.

van, was thrust rearward with significant force, so that a blow from the brake pedal moving backward caused injuries to plaintiff's ankle; (2) the design of the brake master cylinder and brake system in the van was defective and unreasonably dangerous because the design allowed significant and dangerous forces placed upon the brake master cylinder in a frontal collision to be transmitted independently to the brake pedal; and (3) the brake system in the van should have been redesigned so that the master cylinder was repositioned sideways, at an angle or in such a manner that significant and dangerous forces placed on the end of the brake master cylinder would not be transmitted to the brake pedal.

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. Rule 702 allows expert testimony based upon "scientific, technical, or other specialized knowledge," if such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. It is the trial judge's duty to ensure that any and all scientific testimony is both relevant and reliable.[2] *Pestel v. Vermeer Mfg. Co.*, 64 F.3d 382, 384 (8th Cir. 1995) (*citing Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). Such evidence is admissible if it is relevant and reliable, i.e., if it is scientifically based and will assist the trier of fact in determining a fact in issue. *See United States v. Reynolds*, 77 F.3d 253, 254–55 (8th Cir.1996) (per curiam); *Pestel*, 64 F.3d at 384. As recently explained by the Eighth Circuit, this Court "must ... ensure that 'an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Penney v. Praxair, Inc.*, 116 F.3d 330, 333 (1997). "Decisions concerning the admission of expert testimony lie within the broad discretion of the trial court." *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 296 (8th Cir.1996).

Although the Supreme Court's decision in *Daubert* involved "scientific" evidence, the Eighth Circuit has similarly applied the teachings of *Daubert* to cases involving expert testimony from engineers— seemingly involving "technical or other specialized knowledge." *See, e.g., Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 297 (8th Cir.1996) (applying *Daubert* to expert opinions which were based upon "basic engineering principles"); *Pestel*, 64 F.3d at 384 (affirming application of *Daubert* to testimony of mechanical engineer who proposed a safer designed machine). This Court, therefore, must apply Rule 702, and the teachings of *Daubert*, to the testimony of plaintiff's experts, to determine whether their testimony, be it characterized as based upon "scientific" or "technical" knowledge, is admissible under Rule 702. Regardless of the characterization, Rule 702 mandates that an expert's testimony be based upon "knowledge." Fed.R.Evid. 702. While the term "knowledge" as used in Rule 702 does not require exact certainty, it does connote more than subjective belief or unsupported speculation. *Daubert*, 509 U.S. at 594, 113 S.Ct. 2786. The Supreme Court explained that the term "knowledge" refers to "'any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds.'" *Id.* (*quoting* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1252 (1986)). Further, when analyzing an expert's testimony, the court must focus on the principles and methodology employed by the expert, and not on the conclusions generated by the expert. *Daubert*, 509 U.S. at 594, 113 S.Ct. 2786.

Under *Daubert*, the Court must make an assessment whether the reasoning and methodology underlying the expert's testimony is valid. *Peitzmeier*, 97 F.3d at 296–97. *Daubert* sets forth four non-exclusive factors to guide the trial court in determining

2. Engaging in an inquiry concerning the admissibility of expert testimony at the summary judgment stage is appropriate and permissible. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (affirming lower court's striking of expert testimony at summary judgment stage of proceedings); Fed.R.Civ.P. 56(e) (requiring affidavits in support of summary judgment to "set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein").

whether proffered expert evidence is reliable: (1) whether the technique employed or relied upon by the expert has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the technique's rate of error, if known; and (4) whether the technique is generally accepted by the scientific community. *Reynolds,* 77 F.3d at 254 n. 1; *Pestel,* 64 F.3d at 384. The Court is mindful of *Daubert's* emphasis that these four factors are not exclusive, and that many factors may bear on a court's Rule 702 inquiry. "The [plaintiff as] proponent of the expert evidence bears the burden of proving by a preponderance of the evidence ... that the conditions of admissibility exist." *Davidson v. Besser Company,* No. 4:96–CV–449 (DDN), 1997 WL 321489, at *2, n. 2 (E.D.Mo. April 7, 1997) (*citing Daubert,* 509 U.S. at 592, 113 S.Ct. 2786).

■ First, the Court considers whether Kelsey's theories or techniques have been tested. Kelsey bases his theory on his observation of plaintiff's van, personal observation of an exemplar van of the same model, his review of General Motors documents concerning the same automobile model and a videotape of the same model's crash tests. Kelsey did not conduct an independent crash test of the model. Instead, he relies on the videotaped crash test, which depicts an accident that differs in several respects from the collision in which the plaintiff was involved. In particular, the videotape shows a van striking a fixed, immovable barrier. Plaintiff's accident involved a collision with the rear of a pick-up truck that was in operation on a highway and was neither fixed nor immovable. In the crash depicted in the videotape, the van hit the barrier at 31 miles per hour. Kelsey is not certain how fast the plaintiff's van was traveling at the point of impact but calculates its speed at between 20 and 25 miles per hour. Third, the angle of impact in the crash test differed from the angle at which plaintiff's van struck the pick-up truck. Fourth, as plaintiff's van struck the pick-up truck there was some degree of underride as the nose of the van went under the rear of the pick-up truck; the crash test videotape did not depict any underride.

Furthermore, defendant contends Kelsey's use of the videotaped crash test demonstrates scientific unreliablity because the purpose of the crash test was not to examine the speed or force of the brake pedal. In fact, no data was regarding the speed or force of the brake pedal was gathered in this crash test. Indeed, Kelsey uses the visual images in the videotape with the laws of physics and other engineering equations to calculate the speed and force of the break pedal. None of the crash tests performed by General Motors show the forces on the break pedal at the time of frontal impacts. None of the crash tests performed by General Motors indicate how far rearward the break pedal is thrust when the test van impacts the barrier wall.

Additionally, it is anticipated that Kelsey would testify that the defendant could have designed the van's master brake system differently such that plaintiff's injury would not have occurred. According to Kelsey, "[t]he master cylinder could be turned 90 degrees and a bell crank could be placed which is an L-shaped arm that transmits the motion from the pedal to the brake master cylinder push rod to a 90 degree angle and this could have avoided the injury to Ms. Pillow's foot ...." Kelsey has not tested this redesign theory, nor has he demonstrated that it complies with the appropriate internal or governmental standards or is feasible. *See Peitzmeier,* 97 F.3d at 297 ("[expert] has shown no factual basis to support an opinion that his design changes are feasible or that they would not hinder the efficacy of Hennessy's present tire-changing model.").

To be sure, Kelsey has neither personally tested his theory as to design defect nor his redesign theory. Essentially, his testimony and theories are extrapolated from crash tests of dubious similarity. His anticipated testimony consists of entirely untested opinions. This kind of expert testimony is not countenanced by *Daubert* or Rule 702. The proffered testimony does not meet the first *Daubert* factor.

Second, the Court considers whether Kelsey's theories have been subjected to peer review. Kelsey's theories have not been published. However, "[p]ublication (which is

but one element of peer review) is not a sine qua non of admissibility; it does not necessarily correlate with reliability and in some instances well-grounded but innovative theories will not have been published. Some propositions, moreover, are too particular, too new, or of too limited interest to be published. But submission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected. The fact of publication (or lack thereof) in a peer reviewed journal thus will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised." *Daubert*, 509 U.S. at 593, 113 S.Ct. 2786 (citations omitted). Additionally, plaintiff has not established that Kelsey's theories have been subjected to any other form of meaningful and favorable peer review.[3]

The third and fourth *Daubert* factors are the known or potential rate of error and the general acceptance in the scientific community of the proffered theories. Because Kelsey has not conducted any experiments or testing of any kind, there cannot be a known rate of error for his results. *See Peitzmeier*, 97 F.3d at 298. Likewise, there is no evidence concerning a potential rate of error. *Id.* Furthermore, plaintiff has not offered any evidence regarding the general acceptance in the scientific community of Kelsey's theories.

Therefore, because plaintiff has failed to satisfy her burden of demonstrating that the proper conditions to admissibility exist, the testimony and reports of plaintiff's expert H. Boulter Kelsey, Jr. will be excluded.

■ Next, defendant argues that without Kelsey's testimony plaintiff cannot establish an essential element of a products liability action that is based on a theory of defective design, i.e., whether the van was in a defective condition unreasonably dangerous when put to a reasonably anticipated use. Thus, defendant asserts, summary judgment is appropriate.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elertric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R.Civ.P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Plaintiff does not directly address the question of whether she can establish an essential element of her claim without Kelsey's testimony or report. Plaintiff states that "the foregoing deposition testimony of various witnesses, together with Kelsey's Affidavit and deposition testimony attached thereto, along with the crash data and videotape reflect that the master brake cylinder and/or brake pedal were defective and that such a defect played a substantial role in causing [her injuries]." After a review of the record, it appears that plaintiff's admissible

---

**3.** Kelsey's theories have been subjected to peer review by defendant's experts. Defendant's experts have found significant problems with Kelsey's theories.

evidence pertains to issues other than whether the van was sold in a defective condition unreasonably dangerous when put to a reasonably anticipated use. Therefore, defendant is entitled to judgment as a matter of law. *See Peitzmeier,* 97 F.3d at 298.